TOWN OF WARREN *vs.* MYRTLE P. BALL, executrix.

Worcester.    September 27, 1960. — November 8, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, &
CUTTER, JJ.

*Bailment. Replevin. Adverse Possession and Prescription. Municipal
Corporations,* Officers and agents, Property. *Practice, Civil,* Requests,
rulings and instructions; Exceptions: whether error harmful. *Error,*
Whether error harmful.

Evidence warranted a finding that one who asked for and got two pieces
of outmoded fire fighting apparatus of a town for which it had no stor-
age place took them as a bailee.    [353]

A demand by a town for return of two pieces of outmoded fire fighting
apparatus more than eleven years after it as owner, having no place to
store them, had delivered them to one as a bailee thereof might prop-
erly be found to have been made within a reasonable time on evidence
warranting a finding that the parties contemplated that the bailment
might continue indefinitely and that the town would not be expected to
demand return of the apparatus within the six year period of the
statute of limitations.    [353–354]

Possession of personal property by a bailee prior to a demand by the
bailor for a return of the property and refusal of the demand by the
bailee could not be ruled as matter of law to be adverse.    [354–355]

Requests for instructions to the jury based on a fact of which there was
no evidence were rightly refused at the trial of an action.    [355]

No prejudicial error appeared in striking out competent evidence of such
a nature that, had it been allowed to stand, it would not have aided the
case of the party introducing it.    [356]

The chief engineer of a town's fire department had no authority by virtue
of his office to give away outmoded fire fighting apparatus of the town
for which it had no storage place.    [356]

REPLEVIN originally against Charles W. Ball and after
his death prosecuted against the executrix of his will.
Writ in the District Court of Western Worcester dated
October 28, 1957.

Upon removal to the Superior Court the action was tried
before *Bolster, J.*

*Alfred N. Whiting,* for the defendant.
*John P. Schlosstein,* for the plaintiff.

SPALDING, J.   This action of replevin involves the owner-
ship of two pieces of fire fighting apparatus of bygone days,
known as hand tubs.   The case was submitted to a jury who
returned a verdict for the plaintiff.   It is here on the de-
fendant's exceptions to the denial of her motion for a di-
rected verdict, to a ruling on evidence, and to the denial of
certain requests for instructions.

There was evidence of the following: For many years
prior to the transactions under consideration the plaintiff
town had been the owner of two fire tubs: Quaboag no. 1
and Quaboag no. 2.   Quaboag no. 1, the smaller of the two
pieces, was acquired by the town in 1824, and Quaboag no. 2
was acquired in 1867.   Both tubs had long ceased to be
used for fire fighting.   They were, however, used in town
celebrations in 1941 and 1945.   In 1945, there being no
room to store them in the town barn, they were placed out-
doors under tarpaulins.   Included in the warrant for the
town meeting in February, 1946, was an article ''To see
what action the town will take in regard to sale or disposal
of two old fire pumps or take any action relative thereto.''
This article ''was passed over at the town meeting.''
Thereafter, Charles W. Ball (from whom the rights of the
defendant, Ball's executrix, are derived)[1] ''asked for [the
tubs].''   On April 3, 1946, pursuant to authority granted
by the selectmen and to an order of the chief engineer of
the town's fire department, the tubs were delivered to Ball's
premises in a town truck.   When they were delivered Ball
told the assistant chief engineer that ''he was very pleased
to have them and would take good care of them.''   When
the tubs were delivered to Ball they were in ''very poor
condition.''   According to a statement made by Ball prior
to his death, the town had no place to store them, no one
wanted them, and they ''were about to be taken to the
dump.''   When Ball asked for the smaller tub he was told
by the chief engineer that if he wanted one he would have
to take both.   Ball restored the larger tub, Quaboag no. 2.

---

[1] Ball died on January 7, 1958.

The restoration involved making many parts for it, and painting it. One Lizak, a sign painter, was requested by Ball to do the lettering on the tub without compensation inasmuch as he (Ball) was "preserving something for the town of Warren," and Lizak complied with this request. In August, 1946, after the restoration of Quaboag no. 2, Ball rode in it in a town parade.

In 1957, Ball had an opportunity to dispose of the tubs to a person who would preserve them, and, through his wife, asked the town for a bill of sale. The selectmen and town counsel, however, "knew nothing about the tubs." In October of that year the town, through its chief engineer, made a demand for the return of the tubs and, according to the chief's testimony, he was told by Mrs. Ball that the town could not take them; "[it] would have to pay [a] storage charge for storing the pumpers." Mrs. Ball testified that she told the chief engineer at that time that the tubs belonged to her husband; that they were his "most prized possessions"; and that "he wasn't going to give them up unless he had to." This was the only demand made by the town for the return of the tubs.

1. In support of her contention that she was entitled to a directed verdict, the defendant argues that there was no evidence of a bailment of the tubs, that, even if there was, the demand for their return must be made within a reasonable time, and that a demand, as here, eleven and one half years later was not such a demand. The defendant urges that the demand, to be seasonable, must have been made within the period allowed by law for bringing an action of replevin. Under the law here applicable (see G. L. c. 260, § 2, as it read prior to St. 1948, c. 274) this would be six years.

In *Campbell* v. *Whoriskey,* 170 Mass. 63, it was said at page 67, "We are of opinion that the true principle is that the time when the demand must be made depends upon the construction to be put upon the contract in each case. If the contract requires a demand without language referring to the time when the demand is to be made, it is as if the

words 'within a reasonable time' were found in it. What is a reasonable time is a question of law, to be determined in reference to the nature of the contract and the probable intention of the parties as indicated by it. Where there is nothing to indicate an expectation that a demand is to be made quickly, or that there is to be delay in making it, we are of opinion that the time limited for bringing such an action after the cause of action accrues should ordinarily be treated as the time within which a demand must be made." See *Kelley* v. *Thomas G. Plant Corp.* 274 Mass. 102, 106; *Norwood Trust Co.* v. *Twenty-Four Federal St. Corp.* 295 Mass. 234, 237. These principles are applicable here.

We are of opinion that there was evidence of a bailment. There was evidence that the town was in need of a proper place to store the tubs, that at the time the tubs were delivered to him Ball told the chief engineer that he would take care of them, and that when Ball asked Lizak to do the lettering on Quaboag no. 2 without compensation he stated that he was "preserving something for the town of Warren."

If, as the jury could have found, there was a bailment, Ball's possession was initially rightful. But within the principles stated above, the plaintiff was required to assert its rights within a reasonable time. The present action was brought promptly after a demand for the property had been refused. The question, then, is whether the evidence would warrant a finding that the arrangement of the parties should continue into the future for a considerable time before the plaintiff would be expected to demand the tubs. If such a finding was not warranted then, under the rule set forth in *Campbell* v. *Whoriskey,* 170 Mass. 63, 67, the demand would not have been made within a reasonable time, for the town is subject to the statute of limitations, which by analogy would determine the seasonableness of the demand. See *Boston* v. *Nielsen,* 305 Mass. 429, 431. If, however, such a finding was warranted, the statutory period is not controlling on the issue of seasonability. We

are of opinion that such a finding was warranted. In other words, it could have been found that the transaction between the parties, being a bailment, was to continue into the future for a substantial period of time before the plaintiff would be expected to demand the return of the tubs. In the case of a bailment, or where elements of a trust are involved, there often would be no reason for the bailor or beneficiary to assert his rights with the promptness required in ordinary commercial transactions. The bailor or beneficiary would not ordinarily take steps to assert his rights until there had been a repudiation by the bailee or trustee. This is well illustrated in *Campbell* v. *Whoriskey,* 170 Mass. 63. In that case the plaintiff sought to recover money which she had left in the 1870's for safekeeping with her cousin, the defendant. In 1890 she demanded the money from the defendant, and, upon his refusal to give it back, she brought suit in 1895. It was held that the failure to demand the money earlier, in the circumstances, was not fatal to recovery. The court said at pages 67–68, ''While it was undoubtedly contemplated that the defendant might use the money as his own, and that the relation of debtor and creditor should grow out of the transaction, an element of trust entered in, indicating an intention that the defendant should hold it for an indefinite time in the future . . . . Looking at their arrangement and their relations, we are of opinion that the plaintiff was not bound to demand her money within six years in order to save her rights, and that, under all the circumstances, her demand was made within a reasonable time.'' Similarly, in the case at bar there is nothing to indicate that if there was a bailment it was to be for only a limited time. The town apparently had no suitable place for the storage of the tubs. There thus was no reason for either party to have expected a demand for their return within the period of the statute of limitations. It cannot, therefore, be said that the plaintiff's demand was not made within a reasonable time.

The defendant next contends that Ball acquired ownership by adverse possession as matter of law. See *Mulligan*

v. *Hilton,* 305 Mass. 5, 10, and cases cited.   To acquire own-
ership in this manner the possessor must exercise dominion
over the property in some way inconsistent with the rights
of the owner, usually by acts establishing a conversion.
Possession by a bailee or other person with the express or
implied consent of the owner is not adverse.   Am. Law of
Property, § 15.16.   While the evidence establishes that
Ball's possession for the statutory period was open and
continuous, it falls far short of establishing as matter of
law that such possession was hostile to that of the town and
hence adverse.   Until the plaintiff's demand was refused in
October, 1957, Ball's possession could have been found to be
consistent with a bailment.   The defendant's exception to
the denial of her motion for a directed verdict must be
overruled.

2.   The defendant excepted to the refusal to give certain
requests for instructions.   Requests 1, 2, and 3 in substance
asked the judge to charge that, if Ball's possession of the
tubs was wrongful from the beginning, no demand was nec-
essary to start the running of the statute of limitations.
There was no evidence that would indicate that the de-
fendant's possession was wrongful at the outset.   Hence
the requested instructions would have had no relevancy and
would have only confused the jury.   The portion of the
charge set forth in the footnote gave the defendant all that
she was entitled to in view of the evidence in the case.[1]

The questions arising from the refusals to grant the de-
fendant's fourth and fifth requests have been covered in
substance by what has been said in part 1 of this opinion.
There was no error.   We might add that the entire charge
is before us and we are convinced that the jury received full
and accurate instructions on the essential issues.

3.   Entries in Ball's diary covering the period from
April 3 to November 9, 1946, were admitted in evidence.

---

[1] The judge charged, "If during that period of loan or deposit for an un-
specified unlimited time Mr. Ball at any time showed evidence of asserting a
claim in those . . . tubs against the town's interest, then upon the town know-
ing of that or reasonably being charged with notice of it, the so called statute
of limitations . . . would begin to run against the town."

We are concerned here only with the first entry which reads: "April 3, 1946, Had Quaboag #1 and #2 Hand fire tubs presented to me today by Mr. Carroll, Chief Engineer." The plaintiff moved that this entry be struck and the motion was allowed, subject to the defendant's exception. Ball having died, the entries in his diary, to the extent that they satisfied the statute, were admissible under G. L. c. 233, § 65, as a declaration of a deceased person. Since the other entries were admitted, there being nothing in the record to show that the conditions of admissibility contained in the statute had not been satisfied, we must assume that they had been. *O'Brien* v. *Bernoi,* 297 Mass. 271, 274. And we assume without deciding that the entry was not offensive to the statute on the ground that it was an opinion or conclusion rather than a statement of fact. See *Kulchinsky* v. *Segal,* 307 Mass. 571. Compare *Tafralian* v. *Metropolitan Life Ins. Co.* 316 Mass. 429. We are of the opinion, nevertheless, that the allowance of the motion to strike did not prejudice the defendant. The word "presented" in its context in the excluded entry is somewhat ambiguous. It might connote a gift; that is its usual meaning. Or it might suggest something less, that is, a mere turning over of the tubs for purposes other than a transfer of ownership. If it meant that there was a gift of the tubs, and that would appear to be the purpose for which the defendant offered it, the evidence would not have aided her. The chief engineer had no authority to make a gift of the property of the town. See G. L. c. 48, §§ 45-52. Thus, even had the evidence been admitted, the case for the defendant would have been no stronger.

*Exceptions overruled.*