Aimtek, Inc. *vs.* Norton Company.[1]

No. 06-P-843.

Worcester. March 7, 2007. - August 2, 2007.

Present: Perretta, Brown, & Cypher, JJ.

*Bailment. Limitations, Statute of. Damages,* Breach of bailment, Interest. *Interest. Practice, Civil,* Interest, Notice of appeal. *Notice,* Timeliness.

The six-year statute of limitations for contract actions applied to a bailment claim that the plaintiff brought against the defendant four years after discovering that the defendant had scrapped two 1,500 gallon liquid gas tanks belonging to the plaintiff, which the plaintiff had left on the defendant's property after the parties' rental agreement for those tanks had expired, where the gist of the bailment claim stemmed from a consensual arrangement between the parties to leave the tanks at the defendant's facility to facilitate possible future gas deliveries; therefore, the claim was timely filed. [662-666]

In a civil action alleging a bailment, evidence regarding the replacement costs of the bailed items at the time of their loss provided an adequate basis for the jury's award of damages. [666-667]

The judge in a civil action tried before a jury properly awarded prejudgment interest from the date of the filing of the complaint, rather than from the date a breach of a bailment occurred, where the jury did not establish the date of the breach. [667-668]

Civil action commenced in the Superior Court Department on April 9, 2001.

The case was tried before *Timothy S. Hillman,* J., and post-trial motions were heard by him.

*Mark I. Zarrow* for the plaintiff.

*Douglas L. Fox* for the defendant.

Brown, J. The primary issue raised by these cross appeals is which statute of limitations is applicable to a bailment claim. The plaintiff, Aimtek, Inc. (Aimtek), brought this action against the defendant, Norton Company (Norton), some four years after

---

[1]Norton Company is a division of Saint-Gobain Corporation.

discovering that Norton had scrapped two 1,500 gallon tanks belonging to Aimtek, which Aimtek had left on Norton's property after the parties' rental agreement for those tanks had expired. Norton maintains that the three-year statute of limitations for tort actions rendered Aimtek's claim for breach of the bailment untimely. We agree with the trial judge that in these particular circumstances, the six-year statute of limitations for contract actions applied to Aimtek's bailment claim.

Additional issues raised by the parties include proof of damages in an action for breach of a bailment, assessment of prejudgment interest, and the discretion of the single justice to enlarge the time for filing a notice of appeal.

*Facts.* We recount the facts from the trial judge's September 7, 2005, memorandum of decision and order, denying Norton's motion for judgment notwithstanding the verdict or, in the alternative, a new trial. In our discussion, we supplement the facts from the trial transcript and documentary evidence.

In 1984, Aimtek entered into a contract, renewed in 1989, to provide liquid argon and liquid nitrogen gases to Norton, and to furnish two 1,500 gallon tanks at Norton's Worcester facility to hold those products. Norton paid Aimtek a rental fee for the tanks, which, pursuant to the parties' written rental agreement, remained the property of Aimtek. In 1994, Norton notified Aimtek that it was terminating the rental agreement, effective May 8, 1995. Although Aimtek's gas deliveries to the two tanks ceased in 1995, Aimtek did not remove the tanks from Norton's facility. In April, 1997, Aimtek inquired about the tanks and was eventually informed by Norton that they had been scrapped.

The trial transcript reveals a dispute concerning the circumstances whereby Aimtek's tanks remained at Norton's facility after the rental agreement expired. Amar Kapur, Aimtek's president, testified that Aimtek left the tanks with Norton at the request of Marshall Mason, Norton's purchasing agent, who told Kapur that Norton might purchase gas for those tanks in the future. By contrast, Vincent Lucchesi, Norton's operational manager, testified that he recommended that Aimtek remove the tanks, but that Kapur responded that they were not worth moving. The evidence showed that Aimtek removed a 3,000 thousand gallon tank from a nearby Norton facility in 1995, at Norton's

request, and that Aimtek removed other tanks from a Norton facility in Northborough, also upon Norton's request.

*Procedural history.* On April 9, 2001, Aimtek filed a complaint against Norton for breach of the parties' rental agreement, alleging that Norton was liable under the terms of the agreement for ongoing service charges, interest, and replacement costs for the tanks. On March 30, 2004, the parties filed a joint pretrial memorandum, in which Aimtek additionally claimed that Norton was in breach of a bailment. The case was tried to a jury. The jury, in answer to special questions, found that there was no rental agreement between the parties in effect after May 8, 1995. The jury did find that there was a bailment created as to the two 1,500 gallon tanks, and that Norton had committed a breach of that bailment. The jury awarded Aimtek damages in the amount of $64,000.

On April 4, 2005, Norton filed a timely motion for judgment notwithstanding the verdict, principally arguing that the bailment claim was time barred and, in the alternative, seeking a new trial on damages. The judge denied the motion on September 7, 2005. On September 19, 2005, Norton filed a motion for reconsideration, which the judge denied on October 22, 2005. Norton failed to file any notice of appeal until November 14, 2005. In the meantime, on September 23, 2005, Aimtek filed a motion for assessment of prejudgment interest from the date Norton committed the breach of the bailment, which was also denied. On November 30, 2005, Aimtek filed a timely notice of appeal from the denial of its motion for prejudgment interest, and Norton filed a second notice of appeal on December 6, 2005.

Aimtek raised the issue of the timeliness of Norton's notice of appeal when Aimtek filed its brief on appeal. Norton then filed a motion in this court seeking enlargement of the time to file its appeal, which was allowed by a single justice. Aimtek appealed. Aimtek's appeal from the single justice's order was consolidated herewith.

*Discussion.* We first address the statute of limitations issue raised by Norton's cross appeal, and then take up the remaining issues pressed by the parties.

1. *Statute of limitations applicable to bailment.* Norton maintains that Aimtek's bailment claim should be treated as a conversion claim, and thus subject to the three-year statute of

limitations for tort actions. See G. L. c. 260, § 2A.[2] Norton argues that because Aimtek learned that the tanks were missing in 1997, and filed its complaint in 2001, the bailment claim was time barred. Aimtek counters that its bailment claim arose from a consensual arrangement between the parties that Norton would keep the tanks at its facility for possible future gas deliveries and was, accordingly, a contract claim subject to the six-year statute of limitations. See G. L. c. 260, § 2.[3]

A review of Massachusetts cases involving claims for the loss of bailed goods demonstrates that such actions have been brought in contract or tort, or occasionally both. See, e.g., *Weiser* v. *Lane*, 244 Mass. 340, 341 (1923) (action in contract brought against hotel, as bailee, for lost luggage); *Stuart* v. *D.N. Kelley & Son*, 331 Mass. 76, 76 (1954) (action of contract or tort alleging loss from bailment for hire); *Knowles* v. *Gilchrist Co.*, 362 Mass. 642, 642-643 (1972) (bailor brought "an action of tort and contract" against bailee upholsterer for furniture destroyed by fire). In addition, claims arising from the breach of a bailment have been brought as conversion or replevin actions. See *Baer* v. *Slater*, 261 Mass. 153, 154-155 (1927) (conversion claim brought against bailee who delivered merchandise to imposter posing as shipping clerk); *Atlantic Fin. Corp.* v. *Galvam*, 311 Mass. 49, 50 (1942) ("A bailor entitled to possession may maintain an action for conversion"); *Warren* v. *Ball*, 341 Mass. 350, 352-353 (1960) (action for replevin brought to recover bailed goods still held by bailee). See also *D'Aloisio* v. *Morton's, Inc.*, 342 Mass. 231, 232-233 (1961) ("action of tort or contract" for breach of bailment agreement and for negligence and conversion).[4]

It is true that, when stated as a claim for conversion or

[2]General Laws c. 260, § 2A, as amended by St. 1973, c. 777, § 1, states: "Except as otherwise provided, actions of tort, actions of contract to recover for personal injuries, and actions of replevin, shall be commenced only within three years next after the cause of action accrues."

[3]General Laws c. 260, § 2, as amended by St. 1948, c. 274, § 1, states: "Actions of contract, other than those to recover for personal injuries, founded upon contracts or liabilities, express or implied, except actions limited by section one or actions upon judgments or decrees of courts of record of the United States or of this or of any other state of the United States, shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues."

[4]Also unhelpful is the fact that, regardless of whether a bailment claim is

replevin, bailment claims have been subject to the statute of limitations applicable to conversion or replevin actions. See, e.g., *Kelley* v. *Thomas G. Plant Corp.*, 274 Mass. 102, 105-106 (1931) (action for conversion by bailor against bailee would be barred by then-applicable statute of limitations for tort actions). Compare *Warren* v. *Ball, supra* at 352 ("the demand [for return of bailed articles], to be seasonable, must have been made within the period allowed by law for bringing an action of replevin. Under the law here applicable [see G. L. c. 260, § 2, as it read prior to St. 1948, c. 274,] this would be six years"). Nothing in the cases requires, however, that an action to recover for the breach of a bailment must be brought or treated as an action for conversion, as Norton insists. Indeed, no hard and fast rule has emerged to dictate the applicable limitations period for claims arising from bailments.

And so we turn to more general principles. Where the Legislature has not provided limitations periods for specific claims, "we have looked to the 'gist of the action' or the essential nature of the plaintiff's claim." *Hendrickson* v. *Sears*, 365 Mass. 83, 85 (1974). "Under Massachusetts law, the determination of whether the contract or tort statute of limitations applies is controlled by the essential nature of a party's claim" (citations omitted). *Oliveira* v. *Pereira*, 414 Mass. 66, 72 (1992), quoting from *Royal-Globe Ins. Co.* v. *Craven*, 411 Mass. 629, 636 (1992).

Here, Aimtek described its theory of recovery, as set out in the parties' pretrial memorandum and developed at trial, as the breach of a bailment that allegedly arose when Aimtek delivered to Norton the two 1,500 gallon tanks, which remained at Norton's facility for the parties' mutual benefit, and which Norton refused to return to Aimtek upon Aimtek's demand. Aimtek's evidence of the bailment included the testimony of its president that Norton wanted the tanks to remain on its premises after the rental agreement expired, in case Norton needed additional gas deliveries from Aimtek in the future. The consensual nature of the arrangement regarding Norton's retention of the two 1,500 gallon tanks also could be inferred from evidence

brought in tort or contract, the breach of a bailment is described in negligence terms, as one of a duty of care. See *Knowles* v. *Gilchrist Co., supra* at 651-652.

that Norton expressly requested that Aimtek remove other tanks, specifically a 3,000 gallon tank from Norton's neighboring facility and certain additional tanks from Norton's Northborough facility, and that Aimtek complied.

We thus view the essential nature, or gist, of Aimtek's bailment claim as stemming from a consensual arrangement between the parties that the two 1,500 gallon tanks would remain at Norton's facility after the written rental agreement expired, in case Norton wished to resume gas deliveries in the future. Aimtek's claim comports with the long-held definition of a bailment as a consensual arrangement arising from contract. "A bailment is essentially a consensual transaction arising out of a contract express or implied . . . and there must be an acceptance by the bailee of the goods forming the subject matter of the bailment before there can be any bailment." *D.A. Schulte, Inc.* v. *North Terminal Garage Co.*, 291 Mass. 251, 256 (1935). *Stuart* v. *D.N. Kelley & Son*, 331 Mass. at 77-78. Here, it was undisputed that the tanks were originally placed at Norton's facility pursuant to a written contract, and there was evidence showing that the tanks remained with Norton by mutual agreement, after the written contract expired, and not by mere accident or oversight.

Norton disputes the contractual nature of the bailment alleged here. Norton insists that if a bailment existed at all, Norton was a gratuitous bailee, that is, receiving no benefit or compensation from the tanks left behind at its facility after the rental agreement expired. See, e.g., *Massaletti* v. *Fitzroy*, 228 Mass. 487 (1917). Aimtek claimed, however, and the jury were entitled to believe, that the tanks were left in Norton's possession at Norton's request, to facilitate possible future gas deliveries. Such arrangement reflected a bailment for the parties' mutual benefit, rather than a mere accommodation on Norton's part so that Aimtek could avoid the expense of removing the tanks.[5] See, e.g., *Morse* v. *Homer's, Inc.*, 295 Mass. 606, 608 (1936)

---

[5]Both parties suggest that the distinction between a gratuitous bailee, who acts without benefit or compensation, and a bailee for mutual benefit or hire, where both parties are benefited, determines whether the claim is in contract or tort and, hence, the applicable statute of limitations. The cases do not lend themselves to such a convenient dichotomy. See, e.g., *D.A. Schulte, Inc.* v. *North Terminal Garage Co.*, *supra* (claim in contract or tort brought against bailee for hire); *D'Aloisio* v. *Morton's, Inc.*, 342 Mass. at 235 (action of tort

(bailment for mutual benefit of parties, though contingent on future sale of bailed goods, was equated with bailment for hire).

Based on the foregoing, we agree with the trial judge that the essential nature of the bailment claim, as pursued in this case and ultimately established at trial, was contractual. As such, the judge was correct in ruling that the six-year statute of limitations for contract actions, G. L. c. 260, § 2, applied to Aimtek's bailment claim and that the claim was therefore timely filed.[6]

2. *Damages.* Norton also contests the damages awarded by the jury for the destruction of the tanks. Norton relies on *Woburn Country Club, Inc.* v. *Woburn Golf & Ski Authy.*, 21 Mass. App. Ct. 259, 266-267 (1985), for the proposition that a bailor is entitled to recover the fair market value of the bailed goods at the time of their loss. Norton asserts that the only evidence the jury heard on Aimtek's damages was the replacement value of the tanks, rather than their fair market value at the time of the loss.

In denying Norton's postjudgment motion challenging the damages award, the judge ruled that evidence of the replacement cost of the tanks at the time of the loss provided an adequate basis for the jury's award. That evidence included the testimony of Kapur, Aimtek's president, who testified at trial that the list price for the two 1,500 gallon tanks, in 1997, was $39,000 each. The jury also heard portions of Kapur's deposi-

---

or contract for recovery on bailment contract); *Knowles* v. *Gilchrist Co.*, 362 Mass. at 652 (discussing burden shifting in bailment for hire cases, "whether brought in tort or contract"). While we would characterize the arrangement here as a bailment for mutual benefit, based on evidence that Norton's retention of the tanks after the rental agreement expired was to allow for future gas deliveries, that distinction alone does not require that the action be brought in contract or that the statute of limitations for contract actions automatically applies. See *Woburn Country Club, Inc.* v. *Woburn Golf & Ski Authy.*, 21 Mass. App. Ct. 259, 265 n.7 (1985) ("Generally, the distinction is made to determine the scope of the bailee's duty of care . . .").

[6]Norton additionally complains on appeal that the judge instructed the jury on the duty of care owed by a bailee for hire, rather than on the lesser duty owed by a gratuitous bailee. Norton claims to have brought this distinction to the judge's attention in the colloquy that followed the judge's charge. Our reading of that exchange does not indicate that Norton made clear the grounds for its objection or the instruction it sought. Moreover, the judge gave a supplemental instruction to the jury on the issue of a bailee's duty of care, after which Norton failed to renew its objection. Norton's objection did not serve as sufficient notice to the judge of the grounds on which it was raised, and thus did not preserve the issue for appeal. See *Flood* v. *Southland Corp.*, 416 Mass. 62, 66-67 (1993).

tion testimony from November 25, 2002, at which he placed the list price for the tanks, in 1997, at between $32,000 and $39,000 each. We note from the record, as well, that Kapur testified that the value of the tanks had not decreased since their purchase — that in fact, their value had increased over time.

While Norton contends that the evidence was insufficient to prove the requisite fair market value of the two tanks, it does not appear that Norton objected to the judge's instructions to the jury on the issue of damages. The judge's instructions on damages for breach of the bailment were stated in very general terms. Indeed, his instructions on the bailment claim were intermingled to some extent with his instructions on the contract claim, describing the plaintiff's claim "for the defendant's disposal of the two tanks" as "in breach of contract or alternatively in breach of what is known in the common law as a bailment." He went on to explain that "the basic principle of contract damages is that the injured party should be put in as good a position as if the other party had fully performed its obligation." His instructions on damages under the bailment claim merely reiterated that "if the loss or the destruction is the fault of the defendant it is liable for damages to the plaintiff." As no objection was taken from the judge's charge on damages, those instructions constituted the law of the case. See *Freeman* v. *Planning Bd. of W. Boylston*, 419 Mass. 548, 559, cert. denied, 516 U.S. 931 (1995); *Gendreau* v. *C.K. Smith & Co.*, 22 Mass. App. Ct. 989, 990 (1986); *Barry* v. *Stop & Shop Cos.*, 24 Mass. App. Ct. 224, 230 (1987).

In light of the jury instructions on damages, and considering the evidence that the replacement price in 1997 was between $32,000 and $39,000 per tank and that the tanks had not lost value since they were purchased, we think there was sufficient evidence from which the jury could reasonably infer that Aimtek's damages, resulting from Norton's destruction of the two tanks, was $64,000. "While the damages may not be determined by mere speculation or guess, it is enough if the evidence shows the extent of the damages as a matter of just and reasonable inference." *Agoos Leather Cos.* v. *American & Foreign Ins. Co.*, 342 Mass. 603, 608 (1961).

3. *Prejudgment interest.* Aimtek filed a motion, several months after trial, to assess prejudgment interest from the date

the breach of the bailment was committed, pursuant to G. L. c. 231, § 6C.[7] Section 6C provides, in relevant part, that in actions based on contractual obligations, interest is to be added to the amount of damages from the date of the breach or demand, or, if such date is not established, from the date the action is commenced.[8] The judge denied Aimtek's motion for prejudgment interest dating from June, 1997, and awarded interest, instead, from April 9, 2001, the date Aimtek filed its complaint. There was no error.

In a jury trial, it is for the jury to establish the date of breach or demand for purposes of assessing prejudgment interest. *Karen Constr. Co.* v. *Lizotte*, 396 Mass. 143, 149 (1985). "Establishing the date of breach or demand is a determination for the trier of fact, and, where trial has proceeded before a jury, neither the judge nor an appellate court can make such a determination." *Deerskin Trading Post, Inc.* v. *Spencer Press, Inc.*, 398 Mass. 118, 125 (1986). Evidence in the record indicating that on June 4, 1997, Norton informed Aimtek that the tanks had been destroyed does not satisfy the requirement that the trier of fact establish the date for breach or demand. See, e.g., *Framingham Heavy Equip. Co.* v. *John T. Callahan & Sons*, 61 Mass. App. Ct. 171, 180-181 (2004).

The record from the trial does not show that Aimtek sought an instruction to the jury regarding the date of demand or breach with respect to the bailment claim, or that Aimtek objected to the judge's failure to do so. In these circumstances, we will not disturb the judge's ruling that prejudgment interest was to be assessed from the date of commencement of the suit. See *Karen Constr. Co.* v. *Lizotte*, *supra* at 148-149; *Deerskin Trading Post, Inc.* v. *Spencer Press, Inc.*, *supra* at 125-126.

4. *Timeliness of Norton's notice of appeal.* Deciding as we

---

[7]Aimtek states in its brief that the delay was at Norton's behest.

[8]The pertinent portion of G. L. c. 231, § 6C, as amended through St. 1993, c. 110, § 224, provides: "In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum from the date of the breach or demand. If the date of the breach or demand is not established, interest shall be added by the clerk of court, at such contractual rate, or at the rate of twelve per cent per annum from the date of the commencement of the action . . . ."

do, we do not reach the propriety of the action of the single justice. Compare *Shaev* v. *Alvord,* 66 Mass. App. Ct. 910 (2006); *Commonwealth* v. *Barboza,* 68 Mass. App. Ct. 180 (2007).

*Conclusion.* We affirm the judgment for Aimtek, and we affirm as well the judge's order denying Aimtek's motion for assessment of prejudgment interest. Norton's request for attorney's fees associated with responding to Aimtek's appeal from the order of the single justice is denied.

*So ordered.*