Greco, PJ.
The plaintiff-appellant in this case, Dennis Baillargeon, proceeded pro se. In his complaint, styled as an action under the Consumer Protection Act, G.L.c. 93A, he alleged that the defendants, a garage and two of its employees,[1] wrongfully released his car to his girlfriend. That car had been towed to the garage by the Lowell police after the defendant was arrested. After its release, the car was in an accident and seriously damaged.
At the jury-waived trial, there was testimony that on July 6, 2001, after the plaintiffs arrest, his car was towed to the defendant garage. The plaintiff remained incarcerated for the next six months. There was conflicting testimony about the release of the car during his period of incarceration. The plaintiff testified that he never authorized anyone to pick up his car from the garage. Although he was aware that he would be incurring storage charges at the rate of $20.00 per day, the plaintiff was content to have the car remain at the garage until his release. He also testified that he first learned of the accident and damage to his car after his release.
On the other hand, Frank Constiable (“Frank”), the father of the plaintiff’s girlfriend, Charlene Constiable (“Charlene”), testified that the plaintiff called him from jail on July 9, 2001 because of his concern about the storage charges. According to Frank, the plaintiff asked him to give Charlene the $165.00 owed to the garage at that point so that she could get the car out of storage. Frank did so. After Charlene got the car, she turned it over to the plaintiff’s former girlfriend, Nilda Rosa (“Rosa”). The accident in which the car was damaged happened while Rosa had the car. Rosa testified that she spoke to the plaintiff “a couple of times” before the accident, that he indicated that he knew she had his car, that he told her she could use it, and that she subsequently told him about the accident. The plaintiff admitted in his own testimony that while he was incarcerated, he “may have” asked Rosa where the car was and whether she was using it.
At the close of the plaintiff’s testimony, the trial judge “directed findings” for the defendants on the G.L.c. 93A claims. Because this was a nonjury trial, the judge’s rulings constituted Mass. R. Civ. P., Rule 41(b) (2), involuntary dismissals of the plaintiff’s G.L.c. 93A claims. Skowronski v. Sachs, 62 Mass. App. Ct. 630, 632-633 (2004); Hale v. Building 19 1/6, 2002 Mass. App. Div. 38, 39. There was no error in the court’s rul *53 ings. As a matter of law, the evidence did not permit a finding in favor of the plaintiff on his G.L.C. 93A claims. The reason is that the plaintiff failed to serve G.L.c. 93A, §9(3) demand letters on the defendants in satisfaction of that statutory prerequisite to a G.L.c. 93A action and recovery. Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 288 (1985); Richards v. Arteva Specialties S.A.R.L., 66 Mass. App. Ct. 726, 731 (2006).[2]
The trial judge then proceeded with trial, stating that he was “construjing] ” the matter as “a contract or bailment of some kind.” After trial, the judge made a written finding for the defendants “on the contract claim.” From this general finding, it could be inferred that the judge found that there was a contract of bailment, but that the defendants did not breach that contract. See Nylander v. Potter, 423 Mass. 158, 161 n.8 (1996), quoting Erickson v. Ames, 264 Mass. 436, 441 (1928) (A “general finding ... imports a finding of all subsidiary facts essential to that result, so far as permissible on the evidence.”). The trial judge did not make subsidiary findings of fact or rulings of law. None had been requested. In the absence of specific findings and rulings, the plaintiffs appeal presents nothing more than an objection to a general finding which does not constitute a question of law for appellate review. 402 Rindge Corp. v. Tsao, 2002 Mass. App. Div. 30, 31. ‘The reason is that... [appeals] lie only to questions of law, and where there is a general finding, without more, fact and law are interwoven to such an extent that no question of law is presented.” Mastercraft Wayside Furniture Co. v. Sightmaster Corp., 332 Mass. 383, 386 (1955), quoting Muir Bros. Co. v. Sawyer Constr. Co., 328 Mass. 413, 415 (1952).
It should be noted, however, that the conflicting evidence presented at trial would have permitted the judge, in his role as arbiter of the weight and credibility of that evidence, to find in the defendants’ favor. As indicated above, this was a pro se action, which the trial judge liberally construed as presenting both a contract and a G.L.c. 93A claim. An analysis of the evidence even under a possible third theory of recovery (i.e., tort) would not have required a finding for the plaintiff.
The Lowell police had the plaintiffs car towed to the defendant garage pursuant to G.L.C. 255, §39A. Although the plaintiff was not a party to that decision, §39A imposes certain obligations on a garage receiving such a vehicle from the police. The garage must notify the registered owner of the towed vehicle, by registered mail, that it has the vehicle, and must ask the registered owner if he wants the garage to continue to hold the vehicle subject to the applicable storage rates. The balance of the statute addresses what happens if the registered owner fails to respond to the garage’s notice, or ultimately fails to claim his vehicle. Thus, a §39A situation could be viewed as a transaction between the police and the garage that results in a bailment with the registered owner as a third-party beneficiary. The plaintiff’s claim in this case, therefore, was for the loss of bailed goods. “A review of Massachusetts cases involving claims for the loss of bailed goods demonstrates that such actions have been brought in contract or tort, or occasionally both.” Aimtek, *54 Inc. v. Norton Co., 69 Mass. App. Ct. 660, 663 (2007).
It has been recognized that “[a] delivery to an unauthorized person is as much a conversion as would be a sale of the [bailed] property, or an appropriation of it to the bailee’s own use.” Baer v. Slater, 261 Mass. 153, 155 (1927), quoting Hall v. Boston & Worcester R.R., 14 Allen 439, 443 (1867). However, whether delivery was authorized is a question of fact, and it was clearly not erroneous for the trial judge in this case to have concluded that delivery of his car to Charlene and, in turn, to Rosa was authorized by the plaintiff. The trial judge was free to believe Frank’s testimony that he recognized the plaintiff’s voice when the plaintiff called him from jail and asked him to lend his daughter, Charlene, the money necessary to get the plaintiff’s car out of storage. It malees sense that the plaintiff would have done so; otherwise, he would have incurred significant storage charges for his car while he sat in jail. It was also open to the trial judge to believe Rosa’s testimony that the plaintiff was aware that she had his car and had given her permission to use it — testimony that was not contradicted by the plaintiff. Moreover, the trial judge may well have viewed with skepticism the plaintiff’s concern for his car, which he exhibited only after it had been damaged in an accident. Finally, the testimony of Frank and Rosa, together with the timing of the release of the car only three days after the plaintiff’s arrest, rendered inconsequential any failure of the garage to give the notice required by G.L.c. 255, §39A. Based on this evidence, a finding for the defendants was warranted on the plaintiff’s claim, whether viewed as one in contract or tort.
Judgment affirmed.
So ordered.

 The employees are identified in the complaint only as John Doe #1 and John Doe #2.

 The trial judge’s failure to make Rule 41(b) (2) findings, see Hallsmith-Sysco Food Serv., LLC v. Letourneau, 2006 Mass. App. Div. 109, 110, did not render erroneous his dismissals of the plaintiff’s consumer protection claims given the insufficiency of the evidence as a matter of law to permit the plaintiff’s recovery. See Parks v. Ricciardi, 2005 Mass. App. Div. 107, 108, citing S & R Realty Corp. v. Marron, 5 Mass. App. Ct. 800 (1977).