PER CURIAM.
 

 Appellant Juan Garcia challenges on two grounds his conviction, following a jury trial in the United States District Court for the District of Rhode Island, for distribution and conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846. Garcia also challenges the district court’s upward departure under the Sentencing Guidelines. Finding no merit to Garcia’s contentions, we affirm.
 

 The principal witness against Garcia at trial was Detective Bonnie Lovell of the Providence Police Department. Detective Lovell testified as follows. On July 4, 1991, she was working in an undercover capacity. She drove to 129 Moore Street in Providence, Rhode Island, to meet Carlos Eduardo Pardo, from whom she intended to purchase a quantity of cocaine. Detective Lovell was wearing a concealed microphone device that transmitted to a nearby surveillance team.
 

 Pardo was waiting outside his apartment building when Detective Lovell arrived. Detective Lovell told Pardo that she was interested in purchasing cocaine. Pardo asked her to drive him in her car to a nearby public telephone, which she did. Pardo got out of the car, made a telephone call, and re-entered the car, after which Detective Lovell drove back to the apartment building. Soon thereafter, a gray car arrived and parked nearby. Garcia was at the wheel and there were no other persons in the car. Pardo left the detective’s car and went to speak with .Garcia. After a brief conversation, Garcia drove off, and Pardo returned to Detective Lovell’s car.
 

 Pardo remained in Detective Lovell’s car awaiting Garcia’s return. When Garcia returned about five minutes later, he and Pardo got out of their respective cars and met on the front porch of the apartment building, about twenty-five to thirty feet from where Detective Lovell sat in her car. Detective Lovell saw Garcia hand a small object to Pardo, although she could not see exactly what the object was.
 

 Pardo then returned to Detective Lovell’s car with the object in his right hand, and told Detective Lovell to follow him into the building. Detective Lovell and Pardo went into Pardo’s apartment, where Pardo handed her the object that he had been holding in his right hand, which Detective Lovell observed to be a plastic bag containing a white powder resembling cocaine. The plastic bag, upon later analysis, was shown to contain a mixture or substance weighing 35.83 grams and containing a detectible amount of cocaine. Detective Lovell testified that she did not take her eyes off this object from the time Garcia handed it to Pardo to the time Pardo handed it to her. Upon receiving the bag Detective Lovell stated, “Is this stuff as good as the last stuff?” This was a pre-arranged signal to the surveillance team, which then entered the apartment and arrested Pardo.
 

 .Detective Michael Purro, a member of the nearby surveillance team, also testified at trial. Detective Purro testified that he observed Garcia leave the scene after the first meeting with Pardo and drive to a nearby apartment building. There, Garcia got out of his car, entered the building, returned a short time later, got back in his car and returned to the front of Pardo’s building. Detective Pardo also testified that, at the same time that other members of the surveillance team entered the apartment to arrest Pardo, Detective Purro pulled alongside Garcia’s vehicle, held up his detective’s badge and yelled “Police!” Garcia immediately began backing down
 
 *748
 
 the street, but he was quickly stopped by police officers and arrested.
 

 Pardo and Garcia were indicted jointly but Pardo pleaded guilty prior to trial. Garcia, as earlier noted, was convicted following a trial by jury, and he was later sentenced to a term of imprisonment of thirty months. In this appeal, Pardo attacks the sufficiency of the evidence, a remark made by the prosecutor relating to a fact not later supported by evidence, and the calculation of his sentence. We address each issue in turn.
 

 First.
 
 Garcia contends that Detective Lovell’s testimony was inherently incredible and, accordingly, the district court should have granted his motion for a new trial. He contends that Detective Lovell must have been lying when she testified that she kept her eyes on Pardo’s right hand and the object he was holding for the entire period from the time the object was received from Garcia to the time it was handed over to the detective. According to Garcia, this testimony “defied physical laws,” because Detective Lovell’s vision of Pardo’s right hand must have been obstructed at several junctures, such as when Pardo entered and exited the car in which Detective Lovell was seated.
 

 Garcia also argues that Detective Lo-vell’s testimony contained inconsistencies on certain issues (such as whether Pardo and Garcia met on the porch of the apartment building or in the driveway) as well as descriptions of events that are inherently unbelievable. As an example, he cites Detective Lovell’s testimony that, as Pardo and she were exiting her vehicle, she whispered directions to the surveillance team through the hidden microphone just before going up to Pardo’s apartment. Taking all of the alleged flaws in the testimony together, Garcia contends that no reasonable jury could credit Detective Lovell’s version of events.
 

 'While these arguments were appropriate during Garcia’s closing argument to the jury, they have little force on this appeal. “It is axiomatic that, absent exceptional circumstances, issues of witness credibility are to be decided by the jury____ In general, conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial.”
 
 United States v. Kuzniar,
 
 881 F.2d 466, 470 (7th Cir.1989) (citations omitted). Courts have recognized an “extremely narrow” exception to this general rule: Where a witness’s testimony is material and is so inherently implausible that it could not be believed by a reasonable juror, a court may grant a new trial.
 
 Id.
 
 at 470-71. This determination is to be made, in the first instance, by the trial judge, who is in a far better position to assess the credibility of a witness than an appellate court.
 

 In this case, Garcia’s “incredibility” argument was expressly rejected by the trial judge when he denied Garcia’s post-trial motion for a new trial. At the hearing on Garcia’s motion, the judge stated, “[I]n this case ... I see no evidence of any misstatements by any of the witnesses and there is more than ample evidence to support the verdict.” The trial judge’s determination in this regard is not to be overturned absent an abuse of discretion,
 
 see United States v. Rodriguez,
 
 738 F.2d 13, 17 (1st Cir.1984);
 
 United States v. Thornley,
 
 707 F.2d 622, 626 (1st Cir.1983), and we certainly find no such abuse here. Detective Lovell’s testimony that she kept her eye on Pardo’s hand during the entire sequence of events was not inherently incredible. She was working in an undercover capacity on a drug buy and had just observed an individual hand the suspected seller a small package. It is not implausible that Detective Lovell would keep her eye on the package; indeed, one would expect her .to do just that. Even if the hand and its contents disappeared from her view for a few seconds during the sequence of events, the jury could reasonably have viewed Detective Lovell’s testimony on this point as innocent exaggeration in a detail, but essentially true.
 

 As for the alleged inconsistencies, Detective Lovell’s testimony was entirely consistent as to the general sequence of events. There are some minor discrepancies within her testimony, and between her testimony and the transcript of the surreptitious re
 
 *749
 
 cording, as to the exact location of some of these events. Garcia was free to bring these inconsistencies to the jury’s attention during cross-examination and in closing argument. The jury was equally free to view them — as the jury evidently did — as relatively insignificant discrepancies which did not detract from the substance of the overall testimony.
 

 Second.
 
 During opening argument, the prosecutor made a single reference to the fact that the evidence would show that, at the time of Garcia’s arrest, several hundred dollars in cash was recovered from his person.
 
 [1]
 
 At trial, however, the government introduced no evidence that cash was taken from Garcia upon his arrest. Garcia argues that the prosecutor’s remark was prejudicial error. We agree that the reference was error, but we conclude that any objection to the error was waived and was, in addition, harmless beyond a reasonable doubt.
 

 At the outset, we note that Garcia raised this issue for the first time in his motion for a new trial. His failure to raise the issue at the close of the government’s case — when it became apparent that the government had introduced no evidence to support its reference to cash in the opening statement — deprived the court of the opportunity specifically to instruct the jury to ignore the reference. As it happens, the district court did instruct the jury that arguments of counsel are not evidence, and that the jury should consider only the testimony of witnesses and exhibits introduced into evidence. If Garcia wanted a more pointed reference, it was his responsibility to ask for it.
 

 Furthermore, we regard the error as harmless. The evidence of guilt, including Detective Lovell’s chain-of-custody observation and Detective Purro’s testimony regarding Garcia’s attempt to flee, was overwhelming. The prosecutor’s reference to the money in the opening was very brief and nothing was said on the subject in closing. Nor do we have any reason to believe the remark was a deliberate attempt to mislead the jury.
 
 [2]
 
 For these reasons, we conclude that, even apart from waiver of the objection, the prosecutor’s isolated remark would not warrant a new trial.
 
 See United States v. Sutherland,
 
 929 F.2d 765, 775 (1st Cir.),
 
 cert. denied,
 
 — U.S. —, 112 S.Ct. 83, 116 L.Ed.2d 56 (1991).
 

 Third.
 
 It is undisputed that at the time Garcia committed the offenses in this case, there was an outstanding bench warrant for his arrest for failure to appear in New York state court on then-pending charges of possession of a controlled substance. This fact did not directly affect the calculation of Garcia’s criminal history under the Sentencing Guidelines, because the criminal history calculation takes into account only criminal convictions. However, the trial judge departed upward pursuant to U.S.S.G. § 4A1.3, which states, in pertinent part:
 

 If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant’s past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range. Such information may include, but is not limited to, information concerning:
 

 
 *750
 
 (d) whether the defendant was pending trial, sentencing, or appeal on another charge at the time of the instant offense[.]
 

 The trial judge elected, based upon this provision in the guidelines, to depart upward from Criminal History Category I to Criminal History Category II, which increased the sentencing range from twenty-one to twenty-seven months to twenty-four to thirty months. The judge sentenced Garcia to the maximum thirty months. Garcia has not suggested any plausible reason why this was error, and we can conceive of none.
 
 See United States v. Hernandez,
 
 896 F.2d 642, 645 (1st Cir.1990) (upholding upward departure where an individual, already on bail or otherwise charged with a criminal offense, commits a separate offense).
 

 For the foregoing reasons, the judgment of the district court is
 
 affirmed.
 

 [1]
 

 . Garcia argues that the prosecutor repeated during his closing argument the allegation that money was seized at the arrest. We have examined the transcript of the closing and reach a different conclusion. Refuting any suggestion that the police had tailored their testimony to convict Garcia, the prosecutor said that the police — “if they wanted to cook up a case” — could have said that Garcia was seen to exchange money for drugs with Pardo. We do not believe that this statement would be understood as suggesting that cash was in fact taken from Garcia at the time of his arrest.
 

 [2]
 

 . At oral argument, government counsel, who was also the prosecutor at trial, explained that he elected not to introduce evidence that $336 dollars was seized from Garcia because he concluded that he had no evidence directly linking the money to the transaction observed by Detective Lovell. As to the existence of the money, both the police report and the government’s pretrial discovery letter to defense counsel noted that $336 was seized from Garcia at the time of his arrest.