# United States Court of Appeals
## For the First Circuit

No. 17-1856

KRISTIN BLOMQUIST; KEVIN WARNER,

Plaintiffs, Appellants,

v.

THE HORNED DORSET PRIMAVERA, INC.;
UNIVERSAL INSURANCE GROUP, INC.,

Third Party Plaintiffs, Appellees,

VICTORIA BANUCCI; MICHAEL DIXON;
CONJUGAL PARTNERSHIP BANUCCI-DIXON,

Third Party Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Marcos E. López, U.S. Magistrate Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Roberto Boneta, with whom Boneta & Nogueras, LLC was on brief,
for appellants.
Julio C. Cayere-Quidgley, with whom Héctor J. Ferrer-Ríos,
were on brief, for appellee Universal Insurance Group, Inc.

May 31, 2019

**TORRUELLA, Circuit Judge**.    A destination wedding in Puerto Rico can be a wonderfully jovial affair.    Spirits flow freely.    The sights are beautiful.    Guests chat and dance into the early morning hours under the Caribbean sky.    Unchecked joviality, however, has an unfortunate tendency of leading to carelessness. Add an intentionally wet and soapy dancefloor to the equation and someone is bound to get hurt.    And when someone gets hurt, lawsuits frequently follow.    That is what happened here.

Appellants Kristin Blomquist and her husband Kevin Warner filed suit in the District of Puerto Rico against The Horned Dorset Primavera Hotel, Inc. (the "Hotel"), claiming the Hotel was negligent in relation to a slip and fall Blomquist suffered during their friends' wedding in the Hotel premises.    Blomquist and Warner alleged that the Hotel was liable for Blomquist's injuries because it did not respond in accordance with its heightened responsibility under Puerto Rico law to the presence of a dangerous condition in its premises -- a wet and soapy dancefloor.    The jury disagreed, and the district court entered judgment accordingly.

Discontent with this result, Appellants moved for judgment as a matter of law or, alternatively, for a new trial. The district court denied both motions, finding that the jury's verdict was reasonably supported by the evidence and that the Appellants' motion did not provide basis for either a judgment as

a matter of law or a new trial.  Blomquist and Warner appealed, and we now affirm.

## I. BACKGROUND

### A. Factual Background

Appellants Kristin Blomquist and Kevin Warner ("Appellants"), a married couple from New York, traveled to Puerto Rico on April 4, 2013, to attend their friends' destination wedding.  Upon arriving in Puerto Rico, Blomquist and Warner checked into the Horned Dorset Primavera Hotel,[1] where the wedding ceremony, banquet, and reception were to be held on April 6, 2013.

The ceremony and banquet were held in one of the Hotel's ballrooms.  After the banquet, the wedding guests moved outdoors for the reception.  The outdoor reception area consisted of a rectangular space, about thirty-five meters long and eight meters wide, described as a "plaza" (the "plaza") and a slightly elevated pool section.  The plaza is located in a space between two sets of stairs, one leading up to the second floor of the Hotel's main building, and the other leading up to the elevated pool section.  Here, a bar was set up and a temporary dancefloor[2] was installed.

---

[1] During the course of the proceeding, the Hotel filed for bankruptcy.  The bankruptcy court allowed the case to continue with the Hotel's insurer, Universal Insurance Group, Inc., as the defendant.

[2] The temporary dancefloor did not belong to the Hotel.  It was rented from an outside vendor by the wedding planner.

A DJ set up his equipment in the elevated pool area, which had been furnished with tables and chairs. Under the stars, guests enjoyed an open bar and danced to the DJ's tunes.

The festivities, however, took a turn for disorder as the night wore on. The younger crowd of guests that remained at the reception -- a group of approximately forty-five to fifty individuals -- began jumping into the pool and transitioning between the pool and the nearby dancefloor. At some point between 12:00am and 1:30am, following the bride's lead, the guests purposefully wet the dancefloor and began to "slip and slide."[3] They slipped and slid laying on their front sides, backsides, and sideways. A few of the partygoers even began running from the top of the pool area staircase to the dancefloor, in an effort to slide across it.

The Hotel's most senior staff member present, Geraldine Thouvenin, witnessed these actions and proceeded to confront the groom, Michael Dixon, regarding the guests' behavior. Thouvenin warned the groom that this behavior was not recommended and was dangerous. The groom arrogantly disregarded Thouvenin's warning and, in outright defiance, went to the Hotel's kitchen, retrieved soap, and poured it on the dancefloor to increase its

---

[3] "Slipping and sliding" refers to the deliberate act of a person using the momentum created by a vertical movement to launch their body across a flat surface.

slipperiness.[4]  Other wedding guests assisted the groom, pouring water and soap on the dancefloor to add to the "fun."

At some point after the soap and water were poured, Blomquist left the reception and pool area to change into her bathing suit.  When Blomquist returned to the reception area, she slipped and fell on the wet and soapy dancefloor,[5] fracturing her wrist and injuring her back.

## B.  Procedural Background

On November 1, 2013, Blomquist and Warner filed a complaint in the District of Puerto Rico on diversity jurisdiction grounds against the Hotel and its insurance company, Universal Insurance Group, Inc.  Blomquist and Warner alleged that the Hotel was negligent in failing to provide a safe facility, allowing inherently dangerous conditions to continue, and neglecting to warn all parties at risk.  Blomquist demanded $40,909.18 in medical

---

[4] Appellants did not sue the groom.  As the district court noted, if anything, Appellants attempted to prevent a third-party complaint against the groom and bride to proceed.

[5] Consonant with the governing standard of review, Appellants' counsel conceded at oral argument that, for purposes of our review of the district court's denial of their motion for judgment as a matter of law, we must assume that Blomquist's injuries were the result of her deliberate attempt to slip and slide on the dancefloor.  Appellants' motion for new trial, however, is based on the premise that Blomquist's fall was.  Thus, for purposes of their appeal from the district court's denial of their motion for new trial, Appellants maintain that Blomquist did not partake in the slipping and sliding on the dancefloor.

damages; $400,000 for pain and suffering; $200,000 for disability

to engage in her normal life and career activities; and $250,000

for mental suffering and anguish.  Warner demanded $200,000 for

mental pain and anguish.

A two-day jury trial was held on October 4 and 5, 2016.[6]

After closing arguments, the jury was provided a verdict form with

the following two-prong question (the "verdict question"):

> Do you find by a preponderance of evidence that The
> Horned Dorset Primavera was negligent in the operation
> of the hotel facility at the wedding reception held in
> April 2013, and that its negligence proximately caused
> damages to Kristin Blomquist?

The jury responded in the negative.[7]  Accordingly, the

district court dismissed Blomquist and Warner's claims and entered

judgment in favor of the Hotel and its insurer.

Dissatisfied, Blomquist and Warner moved for judgment as

a matter of law.  In the alternative, they requested a new trial.

The district court denied both motions and this appeal ensued.

---

[6] Pursuant to the parties' consent, trial was conducted before a
magistrate judge.

[7] If the jury had responded "Yes" to the verdict question, it was
required to proceed to additional questions.  Specifically, the
verdict form asked the jury: whether it found that the Hotel,
Blomquist, and/or Warner had acted negligently and if their
negligence constituted the proximate cause of Blomquist's
injuries; what proportion of the negligence that caused damage to
Blomquist was attributable to each of these parties; and, how much,
if anything, it would award Blomquist and Warner for their physical
and emotional injuries.

## II. DISCUSSION

## A.  Appellants' Motion for Judgment as a Matter of Law

We review de novo the denial of a motion for judgment as matter of law under Rule 50(b) of the Federal Rules of Civil Procedure.  Thomas & Betts Corp. v. New Albertson's, Inc., 915 F.3d 36, 60 (1st Cir. 2019) (citation omitted).  Notwithstanding, "our scrutiny of the jury verdict is tightly circumscribed." Sailor Inc. F/V v. City of Rockland, 428 F.3d 348, 351 (1st Cir. 2005) (internal quotation marks omitted).  Although we examine the record as a whole, the facts are construed in the light most favorable to the jury verdict, Jennings v. Jones (Jennings I), 499 F.3d 2, 3 (1st Cir. 2007), and any inferences are drawn in favor of the non-movant, Jennings v. Jones (Jennings II), 587 F.3d 430, 438 (1st Cir. 2009).  Moreover, "we do not evaluate the credibility of the witnesses or the weight of the evidence."  Lama v. Borrás, 16 F.3d 473, 475 (1st Cir. 1994).  In sum, "[w]e must sustain the district court's denial of a Rule 50(b) motion for judgment as a matter of law unless the evidence . . . could lead a reasonable person to only one conclusion, namely, that the moving party was entitled to judgment."  Id. at 476 (internal quotation marks omitted).

Appellants' motion for judgment as a matter of law was grounded on their contention that the Hotel was liable because it

-7-

did not comply with its "duty to remediate the dangerous condition" on the dancefloor despite its knowledge of the "dangerous activity" taking place thereon. In denying Appellants' motion for judgment as a matter of law, the district court recounted that the jury was presented evidence reflecting that the dangerous condition was created by "wedding guests and/or the groom"; that Warner was aware of the condition and even partook in the slipping and sliding; and that at least one member of the Hotel's staff -- Thouvenin -- warned the groom about the dangers the condition presented. Based on this, the district court determined that the evidence "[did] not point so strongly and overwhelmingly in favor of liability that no reasonable jury could have returned a verdict for [the Hotel and its insurer]."[8]

Appellants filed their suit under Puerto Rico's general

_____

[8] In fact, the district court went beyond this, concluding that "the Jury determined the Hotel was not negligent," which implied that they "found the Hotel staff acted reasonably and prudently under the circumstances in deciding not to halt the wedding reception" and instead only warning Warner about the dangerous condition. Because a negative response by the jury to either of the verdict question's two prongs -- one related to negligence and the other to causation -- would have freed the Hotel from liability, see P.R. Civ. Code Art. 1802, P.R. Laws Ann. tit. 31, § 5141 (requiring both negligence and causation for the imposition of liability), the district court's conclusion regarding the jury's finding of negligence is not necessarily accurate. It is possible that the jury found that the Hotel was negligent in not taking further action (e.g., warning every single guest about the dangerous condition) but that its negligence was not the proximate cause of Blomquist's injury.

tort statute, Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. Tit. 31, § 5141 ("Article 1802"). Article 1802 provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." Id. Negligence under Article 1802 is generally defined as "the failure to exercise due diligence to avoid foreseeable risks." Woods-Leber v. Hyatt Hotels of P.R., Inc., 124 F.3d 47, 50 (1st Cir. 1997). To succeed on a negligence-based tort claim, a plaintiff must establish four essential elements: "(1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a causal connection between the damage and the tortious conduct." Id. at 50. "[L]iability will only arise if the damages complained of were reasonably foreseeable to the defendant." Irvine v. Murad Skin Research Labs., Inc., 194 F.3d 313, 322 (1st Cir. 1999).

Although they are not absolute insurers of their guests' well-being, hotels have a heightened duty of care towards their guests. Woods-Leber, 124 F.3d at 51. A hotel is required to maintain its premises in such conditions that its guests will not suffer foreseeable injuries; in other words, the hotel must ensure that the areas to which its guests have access are safe. Cotto v. C.M. Ins. Co., 16 P.R. Offic. Trans. 786, 793 (1985). In carrying out its duty of care, a hotel must act as would a "prudent and

-9-

reasonable person under the circumstances." Vázquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43, 49 (1st Cir. 2007). Accordingly, a hotel breaches its duty of care, and thus is liable for an injury caused by a dangerous preexisting condition within the hotel's premises (e.g., as a result of an accidental fall), if (1) the hotel knew or should have known of the condition, and (2) the hotel did not take the precautions of a prudent and reasonable person to avoid or remedy the foreseeable risks the condition created. See id. at 49 (holding that a breach of duty only occurs if a defendant "acted (or failed to act) in a way that a reasonably prudent person would foresee as creating undue risk"); Woods-Leber, 124 F.3d at 51 (citing Goose v. Hilton Hotels, 79 P.R.R. 494, 499 (1956)).

Appellants' tort claim is not at all unusual. As we have noted before, "[c]ases premised on the existence of a dangerous condition often arise from a 'slip-and-fall,' caused by a wet or slippery floor, and involve a claim that the business owner was negligent in permitting the condition to remain because it is foreseeable that a wet floor is likely to cause injury." Vázquez-Filippetti, 504 F.3d at 50.

For Appellants to succeed on their challenge to the district court's denial of their motion for judgment as a matter of law, they must establish that, based on the evidence presented

at trial, a reasonable jury could only conclude: (1) that the Hotel breached its duty of care towards Blomquist (i.e., that the Hotel was negligent), and (2) that this breach of duty constituted the proximate cause of Blomquist's injuries.[9]  See Lama, 16 F.3d at 476; Woods-Leber, 124 F.3d at 50.  A finding to the negative on either is fatal to Appellants' request for a judgment as a matter of law.

Appellants' chances for success slip from their grasp on the second prong -- the jury was presented sufficient evidence to conclude that the Hotel's breach of duty did not constitute the proximate cause of Blomquist's injuries.  Moreover, sufficient evidence was presented for the jury to conclude instead that the proximate cause was Blomquist's deliberate conduct.

**1. Breach of Duty**

Appellants aver that no reasonable jury could have failed to find that the Hotel was negligent and breached its duty of care under Puerto Rico law in the present case's circumstances; in particular, where the Hotel "allow[ed] its guests to wet and soap up a dancefloor during a wedding (with an open bar) . . . [and] engage in dangerous behavior on it," and only advised one of

---

[9] The two other elements of a negligence-based tort claim are not at issue here.  The Hotel does not dispute its heightened duty of care under Puerto Rico law or the physical injuries suffered by Blomquist.

the persons present, the groom, to discontinue the dangerous behavior.

They contend that the Hotel had knowledge of the wet and soapy dancefloor and that, since Blomquist's fall and the resulting injuries were foreseeable, the Hotel had a duty to warn the guests of the condition of the dancefloor and, furthermore, remedy the situation by taking measures to put an end to the guests' dangerous behavior. Appellants rely on the testimony of Hotel employee Thouvenin in support of this contention. Thouvenin testified that she witnessed the wet dancefloor and the guests sliding on it. Up to this point, we can agree with Appellants. Because Thouvenin was present as an employee of the Hotel, her testimony regarding the dancefloor's condition and the wedding guests' behavior could only led a reasonable jury to conclude that the Hotel was aware of the dangerous condition on the dancefloor and of the dangerous activity taking place thereon. Similarly, the jury could only have concluded that the risks presented by the precarious combination of a wet and soapy surface and the ever-present forces of gravity, such as that of Blomquist's fall, were foreseeable to the Hotel. Reaching the opposite conclusion would belie basic human experience, as reflected in a long line of case law. See generally Donald M. Zupanec, Store or Business Premises Slip-and-Fall: Modern Status of Rules Requiring Showing of Notice of

Proprietor of Transitory Interior Condition Allegedly Causing Plaintiff's Fall, 85 A.L.R.3d 1000 (2019) (collecting cases).

With these two elements met -- knowledge of the dangerous condition and a foreseeable risk -- the Hotel had, as a matter of law, a duty to address the dancefloor's dangerous condition. Vázquez-Filippetti, 504 F.3d at 50. In doing so, the Hotel had to act as would a prudent and reasonable person in those circumstances, id. at 49, and here is where things start to slide downhill for Appellants. The inquiry as to whether the Hotel acted as a prudent and reasonable person is case-specific and fact-dependent. See Ocasio-Ocasio v. Guadalupe-Hernández, Civil No. 09-1982 (SEC), 2010 WL 5184785, at *3 (D.P.R. Dec. 21, 2010) (citing Irvine v. Murad Skin Research Labs., Inc., 194 F.3d 313, 322 (1st Cir. 1999) (applying Puerto Rico law)). As such, the question of how the Hotel should have responded to the situation on the dancefloor is one better left for the fact-finder, in this case, the jury. Id. This, in tandem with our standard of review -- which requires that we construe the facts in a light most favorable to the jury verdict and draw any inferences in favor of the Hotel, Jennings I, 499 F.3d at 3; Jennings II, 587 F.3d at 438 -- sets up a slippery slope for Appellants' fall to failure.

Thouvenin testified that the only action the Hotel took to prevent the wedding guests from continuing to slip and slide on

the wet dancefloor was warning the groom that such conduct was not safe.[10]  We recognize that the extent of this response was, as a matter of law, lacking and, thus, inappropriate given that Thouvenin's warning was directed at a single individual,[11] despite the Hotel having a heightened duty of care towards every guest, including Blomquist.   See Woods-Leber, 124 F.3d at 51. Notwithstanding, a finding that the Hotel breached its heightened duty of care by not warning all guests, and Blomquist in particular, is not enough to save Appellants.  The jury could have found that the Hotel did not have a duty of take the further step of remedying the dangerous condition by preventing the guests from using the dancefloor.  This finding, as will become evident below, plays a critical role in our proximate cause analysis.

The jury was certainly presented evidence of additional measures the Hotel could have taken to prevent the guests from using the dancefloor.  On cross-examination, Appellants' counsel

---

[10] The content and forcefulness of Thouvenin's warning to the groom is not completely clear on the record.  Thouvenin, however, did testify that in the hospitality business employees cannot use language as forceful as "You stop it right now" when talking to guests.

[11] Our review of the record reveals that this warning was not the first or only warning given to the groom about wetting the dancefloor.  Before formalities commenced on the day of the wedding, the Hotel's General Manager told the groom that "the [dance]floor cannot be wet."  In fact, the Hotel acquired a tent to place over the dancefloor in order to prevent it from getting wet if it rained.

asked Thouvenin if she requested the Hotel's security guard to intervene with the dancing guests or if she turned off the power so there was no light, to which she responded that she did not. These could seem to be effective measures to us, but the jury might as well have found that they would have been counterproductive. For example, the crowd of guests could have reacted violently to a security guard's intervention, even more so if they were under the influence of alcohol. As the Hotel's general manager testified based on his forty-six years of hospitality experience, when guests are provided an open bar they tend to drink more and "lots of things . . . happen." Likewise, the jury could have concluded that turning off the lights would have been ineffective in deterring the guests' behavior and, furthermore, made the dancefloor more dangerous than it already was by limiting their vision.

Based on the foregoing, it was reasonable for the jury to conclude that the Hotel's breach of duty towards Blomquist was limited to its failure to warn her of the dangerous conditions on the dancefloor and, by the same token, that the Hotel's heightened duty of care did not require it to take additional measures to prevent her from using the dancefloor.

### 2. Proximate Cause

Under Puerto Rico law, a negligent omission, such as a hotel's failure to carry out its duty of care, may constitute the proximate cause[12] of an injury if "in all likelihood, verging on certainty, the injury could have been avoided if the action omitted would have been carried out." Soc. de Gananciales v. G. Padín Co., 17 P.R. Offic. Trans. 111, 124 (1986) (citation omitted). General experience guides the analysis to make such determinations. See Díaz v. E.L.A., 18 P.R. Offic. Trans. 473, 500 (1987). After a careful review of the record, we find that the jury was presented sufficient evidence to conclude that Blomquist would have sustained her injuries even if the Hotel had met its duty of care by warning her of the dangerous condition on the dancefloor.

At trial, the Hotel presented two key pieces of evidence upon which the jury could reach this conclusion: a video showing the wedding guests' behavior on the dancefloor, and the testimony of Hotel employee Antonio Rosa Miranda ("Rosa"), who was working as a waiter during the wedding reception. The video depicts the atmosphere at the dancefloor area during the early morning hours. It shows guests joyfully slipping and sliding in their bathing

---

[12] The legal cause of a tortious injury is also referred to as "adequate cause" in Puerto Rico case law.

suits across the visibly wet[13] yet crowded dancefloor, while others dance beside them. Some guests even have friends grab their limbs and spin them on the dancefloor. Despite Blomquist's testimony to the contrary, based on the video, the jury could have concluded that Blomquist knew the dancefloor was wet, as she saw the other guests slipping and sliding, but nonetheless attempted to join the fun, which ultimately led to her injuries. That Blomquist changed into her bathing suit after the dancefloor had been soaked with water and soap, and thus after the guests had already began to slip and slide therein, as stipulated by the parties, further supports the belief that she was determined to partake in the dangerous behavior.

Rosa's testimony reinforces this notion. He testified that he saw many of the guests "running and sliding chest first on the dancefloor." Among these guests was Blomquist, whom he saw fall while "running or . . . slipp[ing] or . . . try[ing] to slide and [going] . . . sideways." Rosa was able to single Blomquist out among the crowd of guests on the dancefloor with certainty because she was, according to him, "bigger than all the other girls."

Together, the video and Rosa's testimony provided

---

[13] The video also shows a guest further wetting the dancefloor by spraying what appears to be champagne into the air.

sufficient evidence for a reasonable jury to conclude that the proximate cause of Blomquist's injuries was not the Hotel's breach of its duty of care towards her, but rather Blomquist's deliberate attempt to slip and slide on the wet dancefloor like the other guests. See Soc. de Gananciales v. Jerónimo Corp., 3 P.R. Offic. Trans. 179, 186 (1974) (holding that, under Puerto Rico law, proximate cause is not "every condition [without] which the result would not have been produced," but rather only that condition "which ordinarily produces [the result] according to general experience."). In other words, sufficient evidence was presented for the jury to conclude that Blomquist's fall was not the result of an accident attributable to the Hotel's failure to warn her of the dangerous condition in the dancefloor because, based on common experience, she would have decided to partake in the slipping and sliding that caused her injuries regardless. See Aquellos Aseguradores de Lloyd's London v. Compañía de Desarrollo Comercial de P.R., 126 D.P.R. 251, 264 (1990), 1990 WL 710138 (noting that there are situations in which "one cause substitutes [and] takes [the] place" of a prior natural cause[14] of an injury, thereby

---

[14] Puerto Rico law distinguishes natural cause from legal or proximate cause. Natural cause is an expansive concept, covering "any of the conditions necessary to produce an injury," while legal or proximate cause is only "the condition that ordinarily causes the damage, according to common experience." Jiménez v. Pelegrina Espinet, 12 P.R. Offic. Trans. 881, 887 (1982).

"break[ing] the causal nexus . . . [and] becoming . . . the only legal cause of the resulting damage, thus releasing the first actor from liability" (citation omitted)); see also Crespo v. H.R. Psychiatric Hosp., Inc., 14 P.R. Offic. Trans. 1027, 1034 (1983) (in the context of wrongful death claim, recognizing the difficulty in preventing a determined individual from performing a self-injurious act). After all, the jury had already been presented evidence of the ineffectiveness of the Hotel's warnings; even after being warned by Thouvenin about the risks of slipping and sliding on the dancefloor, the groom continued engaging in this dangerous behavior.

Because the evidence presented at trial could lead a reasonable jury to conclude that the Hotel's failure to meet its duty of care was not the proximate cause of Blomquist's injuries, we affirm the district court's denial of Appellants' motion for judgment as a matter of law.

## B. Appellants' Motion for a New Trial

We review the district court's denial of Appellants' motion for a new trial for abuse of discretion. Jennings II, 587 F.3d at 435-36 (citing Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 435 (1996)). A district court may grant a new trial "if the verdict is against the weight of the evidence" or if "the action is required in order to prevent injustice." Id. at 436

(quoting Kearns v. Keystone Shipping Co., 863 F.2d 177, 181 (1st Cir. 1988)). "On appeal, we owe much deference to the trial court's determination. . . . We reverse only if we find that the trial court has abused its discretion in making its assessment of the weight of the evidence." Correia v. Feeney, 620 F.3d 9, 11 (1st Cir. 2010).

Unlike our review of a district court's decision regarding a motion for judgment as a matter of law, however, our "new trial motion standard of review . . . [does] not requir[e] that we take the evidence in favor of the verdict." Jennings II, 587 F.3d at 438 (citations omitted).[15] Notwithstanding, when it comes to witness credibility our standard tilts in favor of deferring to the jury's verdict. See Correia, 620 F.3d at 12 ("It is axiomatic that, absent exceptional circumstances, issues of witness credibility are to be decided by the jury." (quoting United States v. García, 978 F.2d 746, 748 (1st Cir. 1992))). "In general, conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial."

---

[15] This court recently expressed that the standard of review for the denial of a motion for judgment as a matter of law, which is deferential to the jury's verdict, may be applied "in reviewing the denial of a motion for a new trial . . . predicated on a challenge to the sufficiency of the evidence, [given that] the inquiries merge." Dimanche v. Mass. Bay Transp. Auth., 893 F.3d 1, 8 n.9 (1st Cir. 2018). In the present case, the result would be the same under either the deferential or traditional standard.

<u>García</u>, 978 F.2d at 748 (internal quotation marks omitted).

Appellants aver that the district court abused its discretion by not considering their arguments challenging Rosa's testimony that he saw Blomquist dancing and then falling while attempting to slip and slide on the dancefloor. They stress two points: first, that Rosa testified that Blomquist was wearing a black bathing suit when she fell, while stipulated photo evidence reflects that she was actually wearing a black dress over a pink bathing suit; and, second, that the testimony was directly contradicted by Blomquist's testimony that she did not slip and slide on the dancefloor, and was unaware it was slippery.

The nature of this challenge sets it up to fail. We have held that "conflicting testimony or a question as to the credibility of a witness are [generally] not sufficient grounds for granting a new trial." <u>García</u>, 978 F.2d at 748 (citation omitted). This is precisely the type of challenge Appellants raise. They argue that we should strip Rosa's testimony of credibility, accept Blomquist's version of the events, and conclude that the district court abused its discretion in concluding that the jury's verdict was not "against the weight of the evidence." <u>Jennings II</u>, 587 F.3d at 436. We are not persuaded.

The jury was presented with Blomquist's testimony, claiming that her fall was accidental, and Rosa's testimony, which

strongly suggested that Blomquist's fall was the result of an unsuccessful attempt to slip and slide on the dancefloor. No other witnesses testified about the specific circumstances of Blomquist's fall. Thus, the jury had to decide whether to accept Blomquist's account of how she fell or Rosa's. That they chose to accept Rosa's, despite the inconsistencies in his testimony regarding Blomquist's attire, is not grounds for a new trial. García, 978 F.2d at 748.

We hold that the district court did not abuse its discretion in finding that the weight of the evidence supports the jury's verdict, and therefore affirm the denial of Appellants' motion for a new trial.[16]

### III. CONCLUSION

Based on the foregoing, we affirm the district court's denial of Appellants' motion for judgment as a matter of law and motion for a new trial.

**Affirmed**.

---

[16] Inasmuch as Appellants attempt to raise an argument based on the doctrine of comparative negligence under Puerto Rico law, they did not properly flesh it out on appeal and therefore we deem it waived. See U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).