FILED
**United States Court of Appeals**
**Tenth Circuit**

**February 15, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CHRISTOPHER A. SHIVERS,

    Defendant - Appellant.

No. 23-3226
(D.C. No. 2:08-CR-20009-HLT-2)
(D. Kan.)

_____

## ORDER AND JUDGMENT*

_____

Before **BACHARACH**, **KELLY**, and **MORITZ**, Circuit Judges.

_____

Christopher Shivers appeals the revocation of his supervised release, arguing that the district court plainly erred by relying on hearsay testimony without conducting the balancing test established by Federal Rule of Criminal Procedure 32.1(b)(2)(C). Because we conclude that any error was not plain, we affirm.

---

* After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

**Background**

In 2008, Shivers pleaded guilty to armed bank robbery and brandishing a firearm during a robbery; the district court imposed a sentence of 121 months in prison and three years of supervised release. In December 2017, the district court found that Shivers had violated the conditions of his supervised release, so it revoked the term of supervised release and sentenced him to one year and one day in prison and two years of supervised release. Shivers completed this prison term and was released to supervision in the fall of 2018.

In April 2019, Shivers's then-supervising probation officer filed a petition to revoke supervised release. The petition listed six violations: committing new crimes, possessing controlled substances, using controlled substances, failing to report for substance-use testing, and failing (on two occasions) to obtain mental-health treatment as directed. In August 2023, a different probation officer, Krisha Wilbers, prepared a violation report.[1] The report categorized the new crimes as a grade B violation and the five other alleged violations as grade C violations. The report also noted that the United States Sentencing Guidelines (the Guidelines) recommended a sentence of 8 to 14 months for the grade B violation and 5 to 11 months for the grade C violations.

---

[1] The delay between the revocation petition and the violation report appears to align with Shivers serving state sentences for the new crimes alleged in the petition; the record establishes that Shivers pleaded guilty to Kansas felony aggravated battery and misdemeanor sexual battery and received a sentence of about 61 months.

At the revocation hearing, Shivers stipulated to the grade B violation for committing new crimes but not to the grade C violations. The government then stated that it would seek to prove the grade C violations because they would impact the government's recommended disposition. To do so, the government called Wilbers, the probation officer who had completed the violation report. Wilbers explained that Shivers's previous supervising officer had retired, that she had never supervised Shivers, and that she had simply reviewed Shivers's file. In other words, as she repeated on cross-examination, none of her testimony was based on any interaction with or supervision of Shivers.

Wilbers first explained that the two grade C violations for possessing and using controlled substances stemmed from Shivers's positive drug test in February 2019 for cocaine and methamphetamine, though she agreed on cross-examination that she did not administer this drug test. As to the third grade C violation, she stated that—according to emails sent by the testing facility and to the prior supervising officer's notes—Shivers failed to report for drug testing on seven occasions from December 2018 through April 2019 and had offered no explanation for missing those appointments. For the fourth and fifth grade C violations, Wilbers stated that the prior officer's notes indicated he had twice instructed Shivers to schedule a psychiatric evaluation, but Shivers did not do so. Wilbers additionally explained on redirect examination that the prior supervising officer's notes were meticulous and thorough and that officers are trained to make note of any explanations a supervisee

offers for failing to complete various tasks. The government then rested, and Shivers did not put on any evidence.

Based on Wilbers's testimony, the district court concluded that the government had proved the grade C violations by a preponderance of the evidence. When asked, neither party objected to the district court's assessment. The district court noted that the advisory Guidelines sentencing range was 8 to 14 months in prison; the government argued for the top of that range, and Shivers argued for the bottom. The district court then offered Shivers either 14 months in prison or ten months in prison plus six months of supervised release, and Shivers chose the latter.

Shivers now appeals.

## Analysis

Shivers argues that the district court erred in relying on Wilbers's hearsay testimony without conducting the balancing test set forth in Rule 32.1(b)(2)(C). Because Shivers did not raise this procedural-reasonableness issue below, as he acknowledges, we review only for plain error. *See United States v. Ruby*, 706 F.3d 1221, 1225–26 (10th Cir. 2013). Under this demanding standard, Shivers must show a plain error that affected his substantial rights and "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1226.

An error is plain if it is "obvious under current well-settled law." *United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012). "Typically[,] for an error 'to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue.'" *United States v. Miller*, 978 F.3d 746, 763 (10th Cir. 2020)

4

(quoting *United States v. DeChristopher*, 695 F.3d 1082, 1091 (10th Cir. 2012)). "This general principle, however, is most applicable 'where the explicit language of a statute or rule does not specifically resolve an issue[.]'" *United States v. Jones*, 74 F.4th 1065, 1069 (10th Cir. 2023) (alteration in original) (quoting *United States v. Edgar*, 348 F.3d 867, 871 (10th Cir. 2003)). Accordingly, we will also find an error plain when it contravenes the clear language of a statute, sentencing guideline, or rule of evidence or criminal procedure. *See Miller*, 978 F.3d at 764 (statute); *United States v. Brown*, 316 F.3d 1151, 1158 (10th Cir. 2003) (guideline); *Jones*, 74 F.4th at 1070 (evidence); *Edgar*, 348 F.3d at 871–72 (criminal procedure).

Shivers asserts plain error under Rule 32.1, which codifies the minimum due-process rights available during revocation proceedings. *See United States v. Jones*, 818 F.3d 1091, 1098–99 (10th Cir. 2016). One such right is a limited right to confront adverse witnesses. *See id.*; *United States v. Murphy*, 769 F. App'x 631, 633 (10th Cir. 2019) (explaining that "the confrontation right in a revocation hearing" stems from Fifth Amendment's due-process protections and "is not as strong as the Sixth Amendment right").[2] The rule provides that at a preliminary revocation hearing, a releasee has, "upon request, an opportunity to question any adverse witness, unless the judge determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(1)(B)(iii). And at a final revocation hearing, a releasee "is entitled to . . . an opportunity to . . . question any adverse

---

[2] We cite *Murphy* and other unpublished decisions for their persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C).

The advisory committee's notes further explain that these two "provisions recognize that the court should apply a balancing test at the hearing itself when considering the releasee's asserted right to cross-examine adverse witnesses." Fed. R. Crim. P. 32.1 advisory committee's note to 2002 amendments. In so doing, "[t]he court is to balance the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it." *Id.* So, like all other circuits, we have held that "the Rule 32.1(b)(2)(C) balancing test governs whether hearsay evidence may be used to revoke supervised release."[3] *Jones*, 818 F.3d at 1098; *see also id.* at 1099–1100 ("[T]he balancing test applies when determining a releasee's confrontation rights at a final revocation hearing.").

Here, it is undisputed that the district court failed to apply the balancing test before relying on Wilbers's testimony. But the government argues that the district court did not err, or at least did not err plainly, because Shivers never asked it to conduct the balancing test or otherwise asserted his confrontation right. Whether a district court must sua sponte conduct a balancing testing before relying on hearsay to revoke supervised release is a question not answered in our caselaw. Despite

---

[3] In so doing, we departed from prior caselaw that predated the 2002 amendments to Rule 32.1, under which the district court could rely on hearsay during revocation proceedings if the hearsay was reliable. *Jones*, 818 F.3d at 1098, 1100; *see also Curtis v. Chester*, 626 F.3d 540, 545 (10th Cir. 2010) (allowing "admission of hearsay evidence without a showing of cause for the declarant's absence if the evidence is sufficiently reliable").

6

Shivers's assertion to the contrary, neither *Jones* nor *United States v. Henry*, 852 F.3d 1204 (10th Cir. 2017), answered this question. In both, the releasee objected to the hearsay and invoked the right to confrontation, so neither case addresses the question presented here regarding the district court's sua sponte duty. *See Jones*, 818 F.3d at 1097; *Henry*, 852 F.3d at 1208.[4] Moreover, before *Jones*, we suggested in dicta that "[t]he district court is not required to perform the balancing test without some suggestion by counsel." *United States v. Robinson*, 274 F. App'x 638, 641 (10th Cir. 2008). To be sure, in *Robinson* we ultimately declined to "decid[e] whether the district court erred by not conducting a balancing test without an objection" because any error did not affect the releasee's substantial rights. *Id.* But *Robinson*'s nonbinding, pre-*Jones* dicta nevertheless cuts against Shivers's position. And after *Jones*, we have at least questioned whether failing to sua sponte conduct a balancing test was a plain error. *See Murphy*, 769 F. App'x at 642 (doubting that releasee "met his burden to show that the district court erred and that the error was plain" but affirming because any error did not affect substantial rights). So we have no caselaw expressly holding that a district court must sua sponte conduct a balancing test before relying on hearsay at a final revocation hearing, and the caselaw we do have indicates otherwise.[5]

---

[4] *Henry* did not expressly mention whether there was an objection below, but the underlying hearing transcript shows that the releasee objected to the hearsay and invoked his confrontation right.

[5] We also note that two unpublished Eleventh Circuit cases have held that the district court has no sua sponte duty to engage in the balancing test. *See United States v. Belser*, 214 F. App'x 961, 962 (11th Cir. 2007) (holding that because releasee did

Shivers nevertheless argues that the district court plainly erred under the clear language of Rule 32.1(b)(2)(C). *See Edgar*, 348 F.3d at 871–72(finding error plain based on clear language of criminal-procedure rule). In support, he emphasizes that a releasee is "*entitled* to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2) (emphasis added). The word "entitled" means "having a right to certain benefits or privileges." *Entitled*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/ entitled (last visited Jan. 22, 2024); *see also Entitle*, Black's Law Dictionary (11th ed. 2019) (defining word as "[t]o grant a legal right to or qualify for"); *Entitlement*, Black's Law Dictionary (11th ed. 2019) (defining word as "[a]n absolute right to a . . . benefit, . . . granted immediately upon meeting a legal requirement"). But that definition does not exclude the possibility of having to assert or invoke an existing right.

Shivers next turns to the neighboring provision in Rule 32.1(b)(1), which governs preliminary revocation hearings. Recall that this provision explains that a releasee at a preliminary revocation hearing has the right, "*upon request*, to question any adverse witness, unless the judge determines that the interest of justice does not

---

not object to hearsay, "the district court's failure to engage in a sua sponte analysis was not error" (italics omitted)); *United States v. Wooden*, 179 F. App'x 601, 603 (11th Cir. 2006) (stating "that the balancing test is not required where the defendant fails to object"). *But see United States v. Bell*, 623 F. App'x 523, 523–24 (11th Cir. 2015) (concluding that any error in failing to conduct balancing test did not affect substantial rights, without discussing whether absence of objection below meant there was no error whatsoever).

require the witness to appear." Fed. R. Crim. P. 32.1(b)(1)(B) (emphasis added). Because no "upon request" language appears in the provision governing the final revocation hearing, Shivers asserts that a releasee need not make any particular request in order to trigger the balancing test at a final revocation hearing. *See Loughrin v. United States*, 573 U.S. 351, 358 (2014) (explaining that "when 'Congress includes particular language in one section of a statute but omits it in another'—let alone in the very next provision—this Court 'presume[s]' that Congress intended a difference in meaning" (alteration in original) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))); *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 163 (1988) (noting that "traditional tools of statutory construction" apply to interpretation of federal rules (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 (1987))).

While this textual disparity is notable and supports Shivers's position, this slight difference in language does not expressly or clearly require a district court to sua sponte balance a releasee's confrontation right against the government's good cause for not producing a hearsay declarant. The distinction between Rule 32.1(b)(2)(C) and Rule 32.1(b)(1)(B)(iii) appears to stem from Supreme Court precedent describing the minimum due-process rights that exist in revocation proceedings. *See Morrissey v. Brewer*, 408 U.S. 471, 485–89 (1972) (comparing right to request confrontation at preliminary revocation hearing with "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)" at final revocation hearing); *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) (delineating "conditional right to confront

adverse witnesses" at preliminary revocation hearing and "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)" at final revocation hearing). Viewed in this historical light, the "upon request" language in Rule 32.1(b)(1)(B)(iii) appears to provide an avenue for creating a right to confront adverse witnesses that otherwise does not exist at a preliminary revocation hearing; at a final revocation hearing, by contrast, a releasee need not create the right via request because it already exists. In line with this understanding, when Rule 32.1 was first enacted in 1979, the advisory committee noted that at a final revocation hearing, "the [releasee] does not have to specifically request the right to confront adverse witnesses"—presumably because such a right already existed. Fed. R. Crim. P. 32.1 advisory committee's note to 1979 addition.

Indeed, the advisory committee's note to the 2002 amendments does not appear to treat the "upon request" language as meaningful and also suggests that a releasee must assert the confrontation right to trigger the balancing test. First, the note discusses the two provisions together: "Rule 32.1(b)(1)(B)(iii) and Rule 32.1(b)(2)(C) address the ability of a releasee to question adverse witnesses at the preliminary and [final] revocation hearings." Fed. R. Crim. P. 32.1 advisory committee's note to 2002 amendment. Second, the note provides that "the court should apply a balancing test at the hearing itself when considering the releasee's *asserted* right to cross-examine adverse witnesses." *Id.* (emphasis added). The word "asserted" at least suggests that a releasee must take some action to trigger the

balancing test. So on the whole, the language of Rule 32.1(b) does not compel Shivers's interpretation or clearly answer the question presented here: whether a releasee must ask the court to conduct the balancing test or whether the court has a sua sponte obligation to do so. *See United States v. Ruiz-Gea*, 340 F.3d 1181, 1187–88 (10th Cir. 2003) (finding any error not plain even though defendant's interpretation of guideline at issue was plausibly correct but "not compelled").

And we need not answer that question here. It is enough, in this procedural posture, to conclude that even if the district court erred in failing to conduct the balancing test before relying on Wilbers's hearsay testimony to find that Shivers violated the terms of his supervised release, any error was not plain. We have never expressly held that a district court must sua sponte conduct a balancing test before accepting hearsay at a revocation hearing. *See Jones*, 818 F.3d at 1097; *Henry*, 852 F.3d at 1208; *Robinson*, 274 F. App'x at 641; *Murphy*, 769 F. App'x at 642. And nothing in Rule 32.1(b) plainly requires a district court to do so. Finding no plain error, we need not assess the third and fourth prongs of plain error to affirm the revocation of Shivers's supervised release.

## Conclusion

Because any error in relying on hearsay testimony at the revocation hearing without sua sponte conducting Rule 32.1(b)(2)(C)'s balancing test was not plain, we affirm. Appellant's motion to expedite is denied as moot.

Entered for the Court


Nancy L. Moritz
Circuit Judge