# United States Court of Appeals
## For the First Circuit

No. 22-1837

GIBSON FOUNDATION, INC.,

Plaintiff, Appellant,

v.

ROB NORRIS; PIANO MILL GROUP, LLC,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Indira Talwani, U.S. District Judge]

Before

Barron, Chief Judge,
Lynch and Howard, Circuit Judges.

Kurt Schuettinger, with whom Andrea Bates, Bates & Bates LLC, Steven D. Howen, and Law Offices of Steven Howen, were on brief, for appellant.
Daniel J. Gibson, with whom SKB, Attorneys was on brief, for appellees.

December 4, 2023

BARRON, **Chief Judge**.  This case involves a rhinestone-adorned piano, the now-deceased entertainer Liberace, a massive snowstorm, and a collapsed roof.  But the appeal that is before us turns on something far less dramatic: the ins and outs of Massachusetts bailment and contract law.  For the reasons set forth below, we conclude that this body of law requires that we reverse the grant of summary judgment to the defendants on the plaintiff's claims that concern the piano but affirm the denial of summary judgment to the plaintiff on those same claims.

## I.

The plaintiff is Gibson Foundation, Inc. ("Gibson Foundation"), which is based in Nashville, Tennessee, and is the charitable arm of Gibson Brands, Inc. ("Gibson Brands").[1]  Gibson Brands sells several lines of musical instruments and accessories, including a line of pianos that Baldwin Piano & Organ Company ("Baldwin") manufactures.

Baldwin is an American piano manufacturer that has been a subsidiary of Gibson Brands since 2001.  That year, Baldwin filed for bankruptcy and was subsequently purchased by General Electric Capital Corp. ("GE").  GE then assigned its rights, title, and interest in the asset purchase agreement to Gibson Piano Ventures, Inc. ("Gibson Piano Ventures") and designated Gibson Piano

---

[1] Unless otherwise specified, the facts set forth are not in dispute.

Ventures as the buyer of Baldwin and "substantially all" its assets.[2]

The defendants are Rob Norris and The Piano Mill Group, LLC ("Piano Mill"). Norris owns and operates Piano Mill, which is based in Gloucester, Massachusetts, and sells pianos on a retail basis, services pianos, and offers a location for piano lessons. At all relevant times, Norris and Piano Mill were authorized retail sellers of Baldwin pianos.

Gibson Foundation filed suit against Norris and Piano Mill on December 16, 2019, in the United States District Court for the Middle District of Tennessee, based on diversity of citizenship. See 28 U.S.C. § 1332. The complaint alleged claims under Tennessee law for breach of contract, breach of bailment, and conversion. The complaint alleged that Norris and Piano Mill had breached a warehousing agreement and bailment with Gibson Foundation when they refused to return to Gibson Foundation -- upon Gibson Foundation's request -- a piano that Liberace had used in his performances.[3]

The Tennessee district court concluded that there was no personal jurisdiction over Norris and Piano Mill and that venue

---

[2] The record contains no evidence explaining the relationship between Gibson Brands and Gibson Piano Ventures.

[3] Gibson Brands filed for bankruptcy in 2018 and subsequently conveyed its rights in the piano at issue in this appeal to Gibson Foundation.

was improper. The case was then transferred to the United States District Court for the District of Massachusetts. Gibson Foundation's amended -- and now operative -- complaint in the United States District Court for the District of Massachusetts sets forth several claims against Norris and Piano Mill, all of which are brought under Massachusetts law. This appeal concerns two of those claims, which are for breach of bailment and breach of contract.

The breach-of-bailment claim alleges, as did Gibson Foundation's earlier breach-of-bailment claim under Tennessee law, that the transfer of the Liberace piano from Gibson Brands to Norris and Piano Mill was a bailment and that Norris and Piano Mill are liable for breach of bailment because they refused to return the piano to Gibson Foundation when they were requested to do so. The breach-of-contract claim alleges, as did Gibson Foundation's earlier breach-of-contract claim under Tennessee law, that the transfer of the same piano from Gibson Brands to Norris and Piano Mill was made pursuant to a warehousing agreement between Gibson Brands and Norris and Piano Mill, and that Norris and Piano Mill breached the agreement by not returning the piano to Gibson Foundation when they were requested to do so.

Norris and Piano Mill answered the complaint while also filing counterclaims, though none of the District Court's rulings on the counterclaims are at issue in this appeal. In answering

- 4 -

Gibson Foundation's complaint, Norris and Piano Mill asserted that Gibson Brands had no ownership interest in the piano at the time of Gibson Brands's initial request that the piano be returned. Norris and Piano Mill further asserted in answering the complaint that Gibson Brands sent the e-mail request to return the piano only after there had been widespread media coverage of Piano Mill having a Liberace piano and the roof of one of the company's buildings having collapsed during a massive snowstorm.

The parties filed cross-motions for summary judgment on January 28, 2022. Norris and Piano Mill sought summary judgment on, among other claims, Gibson Foundation's breach-of-bailment and breach-of-contract claims under Massachusetts law. Norris's and Piano Mill's motion included as an exhibit an appraisal of the piano that contained pictures of it, approximated its value, and estimated that 10,000 rhinestones originally adorned it. Gibson Foundation sought summary judgment as to all its claims and Norris's and Piano Mill's counterclaims.

On the breach-of-bailment claim, the District Court granted Norris and Piano Mill summary judgment and denied Gibson Foundation summary judgment on the ground that Gibson Foundation's claim for breach of bailment is time-barred under the relevant statute of limitations. On the breach-of-contract claim, the District Court granted Norris and Piano Mill summary judgment and denied Gibson Foundation summary judgment on the ground that

- 5 -

"[Gibson] Foundation has not produced sufficient evidence from which a jury could find an agreement on the material terms of a contract." Gibson Foundation appeals both the grants of summary judgment to Norris and Piano Mill on its breach-of-bailment and breach-of-contract claims and the denials of its motion for summary judgment on those same claims.

## II.

We review the District Court's summary-judgment rulings de novo and draw all inferences in favor of the party against whom summary judgment was entered. Pleasantdale Condos., LLC v. Wakefield, 37 F.4th 728, 732-33 (1st Cir. 2022). Summary judgment is appropriate if, based on the record, there remains no dispute of material fact -- that is, if, based on the record, there is no factual determination which a "rational factfinder" could make as to the "existence or nonexistence" of a fact that "has the potential to change the outcome of the suit" -- such that "the moving party is entitled to judgment as a matter of law." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4-5 (1st Cir. 2010).

The fact that the parties have filed cross motions and appealed those cross motions does not alter these general standards. See Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996). Rather, we review each party's motion independently, viewing the facts and drawing inferences as

required by the applicable standard, and we determine, for each side, the appropriate ruling.  See id.

## III.

We start with the challenge to the District Court's grant of summary judgment on the breach-of-bailment claim to Norris and Piano Mill.  The District Court relied for that ruling on the ground that the claim is time-barred.  The question of whether the claim is time-barred is one of Massachusetts law.  See West v. Conrail, 481 U.S. 35, 39 n.4 (1987) ("When the underlying cause of action is based on state law, and federal jurisdiction is based on diversity of citizenship, state law . . . provides the appropriate period of limitations . . . .").

Our analysis begins with a review of the relevant legal background, which reveals that the key precedent for us to consider is a decision of the Massachusetts Appeals Court ("MAC"), Aimtek, Inc. v. Norton Co., 870 N.E.2d 1114 (Mass. App. Ct. 2007).  We then explain why, given that precedent, we must reverse the grant of summary judgment.  We make clear, however, that Aimtek does not affect resolution of Norris's and Piano Mill's alternate argument that Gibson Brands never had ownership of the piano, which we address in Part IV.

## A.

The parties do not dispute that Gibson Foundation's breach-of-bailment claim is timely if the six-year limitations

period that Massachusetts sets forth for certain contract claims applies, see Mass. Gen. Laws ch. 260, § 2, or that the claim is time-barred if, as the District Court held, the three-year limitations period that Massachusetts sets forth for tort claims applies instead, see Mass. Gen. Laws ch. 260, § 2A. The parties' dispute concerns only whether the District Court was right to hold that, on this record, it is indisputable that Gibson Foundation's breach-of-bailment claim is in effect no different from a claim for conversion and replevin and so for that reason is subject to the three-year limitations period for tort claims. Gibson Foundation contends that the District Court erred in so ruling because a reasonable juror could find based on the record that the claim is subject to the six-year limitations period that applies to certain contract claims.

We assume for present purposes that there is a genuine issue of material fact in dispute as to whether, as Gibson Foundation alleges, there was both a valid bailment and a breach of that bailment, such that the breach-of-bailment claim would survive summary judgment if it were timely. After all, if there were no such genuine issue of material fact in dispute, then there would be no reason for us to address the timeliness issue at all, as in that case the grant of summary judgment to Norris and Piano Mill could be affirmed even if the claim were timely. See John G. Danielson, Inc. v. Winchester-Conant Props. Inc., 322 F.3d 26, 37

(1st Cir. 2003) (explaining that a judgment may be affirmed on any ground manifest in the record).

No Massachusetts statute sets forth the limitations period that applies specifically to a breach-of-bailment claim. Thus, under Massachusetts law, we must look "to the 'gist of the action' or the essential nature of the plaintiff's claim," Hendrickson v. Sears, 310 N.E.2d 131, 132 (Mass. 1974), to determine the applicable limitations period.

The District Court appears to have undertaken this inquiry and reasoned that, under Massachusetts law, the "essential nature" of all breach-of-bailment claims makes any such claim a species of a claim for replevin and conversion, both of which are claims that sound in tort. The District Court then appears to have concluded on that basis that Gibson Foundation's breach-of-bailment claim is subject to a three-year limitations period, as that claim was in its nature a tort claim just as surely as is a claim for replevin or conversion.

In Aimtek, however, the MAC explained that "no hard and fast rule has emerged to dictate the applicable limitations period for claims arising from bailments" based on their "essential nature." 870 N.E.2d at 1118. Rather, the MAC concluded that while, under Massachusetts law, some breach-of-bailment claims are properly subject to the three-year limitations period for tort claims, others are properly subjected to the six-year limitations

period for certain contract claims. Id. at 1117-20. The MAC then proceeded in Aimtek to assess whether the "essential nature, or gist" of the plaintiff's breach-of-bailment claim in that specific case made it subject to the three-year or the six-year limitations period, id. at 1119-20, and concluded that the claim's contractual nature made the longer limitations period applicable, id. at 1120.

Of course, a decision by the MAC does not necessarily bind us here, as our task is to determine how the highest court of Massachusetts, which is the Massachusetts Supreme Judicial Court, would rule on the timeliness issue. See Showtime Ent., LLC v. Town of Mendon, 769 F.3d 61, 79 (1st Cir. 2014). But we see no basis for engaging in a different inquiry to determine the applicable limitations period for this breach-of-bailment claim than the one in which the MAC engaged in Aimtek. Indeed, the District Court's analysis supplies no reason for our doing so, as the District Court appeared to be relying, in part, on Aimtek itself in concluding that this claim was subject to the limitations period for tort claims. Moreover, on appeal, the parties appear to agree that if the reasons that Aimtek gave for determining that the "essential nature, or gist," 870 N.E.2d at 1119, of the breach-of-bailment claim at issue there was contractual in nature equally support the conclusion that the breach-of-bailment claim at issue here is also contractual in nature, then the six-year limitations period would apply to this claim just as the MAC held it applied

- 10 -

to that claim.  As a result, assuming that this breach-of-bailment claim otherwise can survive summary judgment, we must decide whether a reasonable juror could find based on the record that the claim at issue here is in all relevant respects the same as the claim in Aimtek.  Reviewing de novo, Pleasantdale Condos., 37 F.4th at 732-33, we conclude, for the reasons that we will next explain, that a reasonable juror could so find.

**B.**

In Aimtek, a Massachusetts company, Aimtek, Inc. ("Aimtek"), entered into a contract in 1984 with another Massachusetts-based business, Norton Company ("Norton"), to provide liquid nitrogen and argon gases to Norton.  Under that contract, Norton had a lease with Aimtek to store two 1,500-gallon tanks, owned by Aimtek, at Norton's Worcester, Massachusetts, facility to hold such gas products.  Aimtek, 870 N.E.2d at 1116.

Roughly a decade later, in 1994, Norton notified Aimtek that it was terminating the contract.  Id.  After the contract was terminated, however, Aimtek left the tanks with Norton, at Norton's request, in the event that Norton wished to resume purchasing gas for those tanks from Aimtek in the future.  Id. at 1116-17.

Norton later scrapped the tanks, and more than three but less than six years after Aimtek learned that the tanks had been scrapped, Aimtek filed a claim against Norton in Massachusetts state court that alleged that Norton was in breach of a bailment

- 11 -

with respect to the tanks. Id. Following a jury verdict in Aimtek's favor on the claim, Norton moved for judgment notwithstanding the verdict on the ground that the three-year limitations period for tort claims applied to Aimtek's breach-of-bailment claim and thus that the claim was time-barred. Id. at 1117. The trial court denied the motion after determining that the six-year limitations period for certain contracts claims applied instead, Aimtek, Inc. v. Norton Co., No. 01-0709C, 2005 WL 4924656 (Mass. Supp. Sept. 7, 2005), and the MAC then affirmed that ruling on appeal, Aimtek, 870 N.E.2d at 1120.

The MAC reasoned that the six-year limitations period for certain contract claims applied because the record supportably showed that the underlying bailment stemmed from "a consensual arrangement between the parties that the two 1,500-gallon tanks would remain at Norton's facility after the written rental agreement expired, in case Norton wished to resume gas deliveries in the future." Id. at 1119 (emphasis added). Moreover, the MAC emphasized that the record sufficed to show that the bailment established by this consensual arrangement was for the "mutual benefit" of the parties and so was not a gratuitous bailment in which Norton received "no benefit or compensation from the tanks left behind at its facility." Id. The MAC based this latter determination on the ground that the record sufficed to show that, under the consensual arrangement that resulted in the bailment,

- 12 -

Aimtek benefitted by avoiding the expense of removing the tanks while Norton benefitted because "the tanks were left in Norton's possession at Norton's request, to facilitate possible future gas deliveries." Id.

The MAC did make a point of explaining that the determination of whether a bailment was gratuitous or for the mutual benefit of the bailor and the bailee does not necessarily determine whether a breach-of-bailment claim is subject to the three-year limitations period for tort actions or the six-year limitations period for certain contract actions. Id. at 1119 n.5. The MAC concluded that "[t]he cases do not lend themselves to such a convenient dichotomy." Id. But the MAC still ruled that the bailment in question was subject to that latter contract-based limitations period because the underlying bailment was the result of a "consensual arrangement . . . for the parties' mutual benefit." Id. at 1119-20 (emphasis added).

We see nothing in the record to distinguish the case at hand from Aimtek. Rather, we conclude that a reasonable juror could find based on the record that the breach-of-bailment claim here, like the breach-of-bailment claim in Aimtek, stems from a consensual arrangement between the parties that mutually benefitted them and not from a merely gratuitous bailment, as Norris and Piano Mill contended is the case for the first time at

- 13 -

oral argument. In this regard, we conclude that, based on the record, a reasonable juror could find as follows.

On June 20, 2011, Baldwin's business-development manager, Tom Dorn, e-mailed several people, including Norris, about the immediate availability of two new model BD275/BH275 concert grand pianos from Baldwin Dongbei. Norris then responded by e-mail that "Piano Mill would still very much like to have a Baldwin concert grand to use for symphony rentals and promotional opportunities" but that he was "not currently in a position to shell out the 30k to purchase one outright." In addition, Norris mentioned in the e-mail that his business partner was connected to several touring acts and wondered whether Dorn might be able to come up with a "creative arrangement" to help both Piano Mill and Baldwin gain exposure.

Dorn responded, in turn, with an e-mail that stated that such an arrangement was "beyond [his] scope" but that he would forward Norris's e-mail to someone in Gibson Brands's entertainment-relations department. Norris sent Dorn an e-mail in response in which Norris thanked Dorn and added as "just another thought" that Piano Mill had a full-service restoration shop and that, "[i]f there was a road worn concert grand in Baldwin[']s stable," Norris would be able to do any restoration required "to get it to concert level play and back on the road."

After this e-mail exchange, Norris had several phone calls with Dorn and Jim Felber, an employee in Gibson Brands's entertainment-relations department, about a Baldwin model SD-10 in which Norris might be interested. That model was the Liberace piano that is now at the center of this dispute.

During one phone call between Norris and Felber about the piano, Felber told Norris that it was on the seventh floor of the Manhattan Center in the Hammerstein ballroom, which was being renovated. Felber further told Norris in the phone call that the piano would be "all yours" if Norris could remove it by the end of the week.

Subsequently, on July 11, 2011, Norris's contractors moved the piano from the Hammerstein ballroom to Norris's restoration shop in Hampton, Massachusetts. After picking up the piano, Norris e-mailed Dorn and Felber to "[t]hank [them] both for [the] opportunity," and Norris asked whether he could "make some cosmetic repairs as well as . . . do some fine regulation" on the piano. Felber responded that he was "OK with repairs and aware of missing pieces."

In the years following, the piano stayed in Norris's and Piano Mill's possession, and the piano was used as a promotional tool, including in connection with a Liberace biopic. It was not until years later, after Gibson Brands and Gibson Foundation executed a bill of sale purporting to transfer ownership of a

"Baldwin Liberace SD-10" to Gibson Foundation, that Gibson Foundation sued Norris and Piano Mill over the Liberace piano at the center of this dispute.

Based on the above communications and events, a factfinder could reasonably determine that, insofar as there was a bailment of the piano at all, it was a "consensual arrangement," id. at 1119, between Gibson Brands and Norris and Piano Mill, as Gibson Brands requested that Norris and Piano Mill take possession of the piano, and Norris and Piano Mill agreed to do so. Moreover, a factfinder could also reasonably determine from these communications and events that Gibson Brands as bailor and Norris and Piano Mill as bailees each benefitted from this consensual arrangement, as a reasonable jury could find based on the record that Gibson Brands obtained storage for a valuable asset and avoided the costs of moving the piano while Norris and Piano Mill obtained substantial publicity and marketing opportunities from having possession of the piano.

Norris and Piano Mill do make one further argument in defense of the District Court's statute-of-limitations ruling, although they advanced this argument, too, for the first time at oral argument. They contend that because there was a contract between the bailor and the bailee in Aimtek, there was a basis there that is not present here for treating that breach-of-bailment claim as contractual in nature. But the contract in Aimtek that

- 16 -

Norris and Piano Mill identify was a rental agreement that had expired prior to the bailment. Id. at 1116. We thus do not see how Aimtek may be distinguished on this ground. Accordingly, we hold that Norris and Piano Mill are not entitled to summary judgment on Gibson Foundation's breach-of-bailment claim on the ground that the claim is time-barred.

**IV.**

Norris and Piano Mill argue, as a fallback, that they are entitled to summary judgment on the breach-of-bailment claim even if the claim is not time-barred because, as a matter of law, the claim is without merit. See John G. Danielson, 322 F.3d at 37 (explaining that a judgment may be affirmed on any ground manifest in the record). They point out that a bailment "is the delivery of goods by their owner to another for a specific purpose, and the acceptance of those goods by the other, with the express or implied promise that the goods will be returned after the purpose of the delivery has been fulfilled." Goudy & Stevens, Inc. v. Cable Marine, Inc., 924 F.2d 16, 18 (1st Cir. 1991) (emphasis added); see Nash v. Lang, 167 N.E. 762, 765 (Mass. 1929). Thus, they explain, one of the essential elements of a bailment is that the bailor owns, or holds title to, the property in question, see Goudy, 924 F.2d at 18, and they stress that the burden of proving the existence of a bailment under Massachusetts law rests with the party that alleges the breach of a bailment, see Orient Overseas

- 17 -

Container Line v. John T. Clark & Sons of Bos., Inc., 229 F. Supp. 2d 4, 15 (D. Mass. 2002). They then contend that Gibson Foundation has failed to meet its burden to show that there is a supportable basis for finding that it has proved the element of ownership because "[Gibson] Foundation [has] provided nothing more than unsupported, conclusory statements and vague documentation in support of its claim that [its] alleged predecessor in interest, Gibson Brands, Inc., owned the piano during the timeframe up to and including July 2011" -- the month in which Norris and Piano Mill picked up the piano and transferred it to their restoration shop in Hampton, Massachusetts.[4]

To back up this argument, Norris and Piano Mill point to the fact that Cesar Gueikian, Brand President of Gibson Brands, testified that, although he believed Gibson Brands acquired the piano through the 2001 asset purchase agreement of Baldwin, he was unaware of the existence or location of any inventory documents that show the piano coming into Gibson Brands's possession. Moreover, we note that the record does show that, while the asset

---

[4] Norris and Piano Mill also contend that Gibson Foundation's breach-of-bailment claim fails as a matter of law because Gibson Foundation cannot show that a reasonable juror could find based on the record that the material terms -- whether express or implied -- of the alleged bailment agreement are sufficiently definite to create an enforceable agreement. Because this contention mirrors Norris's and Piano Mill's contention as to why Gibson Foundation's breach-of-contract claim fails, we address this argument in Part V, where we discuss the claim for breach of contract.

- 18 -

purchase agreement did contemplate the sale of Baldwin's "personal property" and specified that certain categories of personal property would be excluded from the sale, the agreement did not identify whether any pianos were included among the personal property being sold.

In addition, Norris and Piano Mill point to the fact that, when Gibson Brands filed for bankruptcy in 2018, Gibson Brands did not disclose the piano as one of its assets in its filings. Norris and Piano Mill argue that because Gibson Foundation cannot point to any evidence in the record of Gibson Brands having title or ownership of the piano, there is no supportable basis in the record for finding that Gibson Foundation can meet its burden to show that there was a bailment. The contention is that, to meet that burden, Gibson Foundation must show that a reasonable juror could find based on the record that Gibson Brands owned the piano at the time that Norris and Piano Mill took possession of it. Therefore, Norris's and Piano Mill's argument goes, Gibson Foundation's breach-of-bailment claim fails as a matter of law given that Piano Mill cannot breach a bailment that does not exist.

Under Massachusetts law, however, the burden to prove the ownership element for a bailment may be satisfied with proof of the bailor's possession of the property at issue at the time that the claimed bailment was established, given that "possession

[of personal property] is _prima facie_ evidence of title, good against everybody but one proving property; that is, against any one but the right owner." _Magee_ v. _Scott_, 63 Mass. (9 Cush.) 148, 150 (1851); see _Hurley_ v. _Noone_, 196 N.E.2d 905, 908 (Mass. 1964). And it is undisputed that Gibson Brands physically _possessed_ the piano before Gibson Brands transferred it to Norris and Piano Mill. Thus, as Norris and Piano Mill identify no evidence that anyone other than Gibson Brands owned the piano before or during the time of the piano transfer, we see no basis for affirming the District Court's grant of summary judgment to Norris and Piano Mill on the ground that, as a matter of law, Gibson Foundation cannot show that a reasonable juror could find based on the record that Gibson Brands owned the piano at the relevant times.[5] See _Magee_, 63 Mass. at 150.

Our determination on this score does not mean, however, that there is merit to the related contention by Gibson Foundation that we must reverse the District Court's denial of Gibson Foundation's own summary-judgment motion on the claim. To be sure, as we have explained, Norris and Piano Mill have not conclusively rebutted Gibson Foundation's prima facie case for ownership of the piano because they have not indisputably established that a party

_____

[5] Norris and Piano Mill do not argue that, if there was a bailment, it was between them and Gibson Brands, not them and Gibson Foundation -- the current plaintiff. We thus do not address that contention.

- 20 -

other than Gibson Brands was the rightful owner when the piano was in Gibson Brands's possession. Id. But it remains the case that the record contains no inventory documents that show how the piano came into Gibson Brands's possession and that the record shows that Gibson Brands failed to include the piano as one of its assets in its 2018 bankruptcy filings. A reasonable factfinder could conclude on this record, therefore, that Gibson Brands did not own the piano at the relevant times. Thus, because there is a genuine dispute of material fact as to the ownership issue, we affirm the denial of the grant of summary judgment to Gibson Foundation on this claim.

**V.**

We turn our attention now to Gibson Foundation's breach-of-contract claim. "To prove a breach of contract under Massachusetts law, a plaintiff must show 'that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage.'" Shaulis v. Nordstrom Inc., 120 F. Supp. 3d 40, 54 (D. Mass. 2015) (quoting Guckenberger v. Boston Univ., 957 F. Supp. 306, 316 (D. Mass. 1997)).

As we have explained, a reasonable juror could find based on the record both that the bailment at issue here was a consensual arrangement between Gibson Brands and Norris and Piano Mill and that this arrangement was for the "mutual benefit" of the parties

- 21 -

to it, Aimtek, 870 N.E.2d at 1119. Our question with regard to the breach-of-contract claim, however, is whether, Massachusetts bailment law aside, a reasonable juror could find based on the record that there was a warehousing agreement[6] between the parties as to this piano such that there was a valid contract between them. For, if a reasonable juror could not so find, then there could be no breach-of-contract claim that could survive summary judgment.

Under Massachusetts law, "[i]t is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement." Situation Mgmt. Sys., Inc. v. Malouf, Inc., 724 N.E.2d 699, 703 (Mass. 2000). And while "[i]t is not required that all terms of the agreement be precisely specified, and the presence of undefined or unspecified terms will not necessarily preclude the formation of a binding contract[,] . . . [t]he parties must . . . have progressed beyond the stage of 'imperfect negotiation.'" Id. (citation omitted). Moreover, although an exchange of e-mail communications can constitute a contract under Massachusetts law, see Fecteau Benefits Grp., Inc. v. Knox, 890 N.E.2d 138, 145 (Mass. App. Ct. 2008), "[a]ll the essential terms of a contract must be definite and certain so that the intention of the parties may be

_____

[6] Gibson Foundation sometimes refers to this warehousing agreement in its briefing to us as a "loan agreement."

- 22 -

discovered, the nature and extent of their obligations ascertained, and their rights determined," Cygan v. Megathlin, 96 N.E.2d 702, 703 (Mass. 1951).

The District Court ruled that Norris and Piano Mill were entitled to summary judgment on Gibson Foundation's breach-of-contract claim because a reasonable juror could not find based on the record that all the essential terms of the alleged contract were definite and certain. Gibson Foundation disagrees.

According to Gibson Foundation, the record suffices to show that Gibson Brands offered for Norris and Piano Mill to take possession of the piano on the condition that they would have to return it to Gibson Brands if and when Gibson Brands asked for it. Gibson Foundation then goes on to argue that a reasonable juror could find based on the record that Norris and Piano Mill accepted this offer by taking possession of the piano.[7] Accordingly, Gibson

_____

[7] Gibson Foundation also contends that the agreement that Norris and Piano Mill themselves posit as having been struck is just as simple -- the offer was that Norris and Piano Mill could have the piano, so long as they bore the expense of moving it, and the acceptance occurred when Norris and Piano Mill picked up the piano and stored it. Gibson Foundation then argues that under that view of the agreement, there is "everything needed to be a contract [--] mutual assent through offer and acceptance and consideration for each party." But this contention does little to support Gibson Foundation's position on appeal. As Gibson Foundation concedes, Norris and Piano Mill accepted Gibson Brands's offer that Norris and Piano Mill could have the piano so long as they bore the expense of moving it by taking possession of the piano. Thus, if the simple contract at issue were only the one that Gibson Foundation argues even Norris and Piano Mill accept

- 23 -

Foundation argues, a reasonable juror could find based on the record that the claimed warehousing agreement with respect to the piano has "everything needed to be a contract [--] mutual assent through offer and acceptance and consideration for each party." Gibson Foundation describes the consideration as Gibson Brands being able to avoid storage costs and Norris and Piano Mill benefitting from having a promotional item to use until Gibson Brands (and now Gibson Foundation) were to ask for the piano to be returned. Reviewing de novo, Pleasantdale Condos., 37 F.4th at 732-33, we agree with Gibson Foundation.

As we have previously explained, a reasonable juror could find on this record that Gibson Brands owned the piano before and when Norris and Piano Mill picked it up. Gibson Foundation also points to several facts in the summary-judgment record that supportably show that Gibson Brands did not transfer ownership of the piano to Norris and Piano Mill. In that regard, the record supportably shows that Norris, via an e-mail to Dorn, asked to use -- not buy -- a piano from Gibson Brands for promotional opportunities and that Norris, after picking up the piano from the

---

existed, then there would appear to be no basis in the record for finding that the breach-of-contract claim could survive summary judgment, because, in that event, there would appear to be no basis in the record for finding that the contract had been breached.

- 24 -

Hammerstein ballroom, then asked for permission via e-mail to Gibson Brands to conduct repairs on it.[8]

In concluding that a reasonable factfinder could find on this record that the "simple" contract posited by Gibson Foundation exists, we emphasize that the aspects of the record just described supportably show that both parties understood which piano was to be picked up from the Hammerstein ballroom and that this piano was the one that grounds this claim. Moreover, although the District Court emphasized to the parties in the final pretrial conference on October 14, 2022, that there was no "price" specified for this simple contract, the contract that is being alleged here is not for the sale of goods. Cf. Jacobson v. Perman, 131 N.E. 174, 175 (Mass. 1921) ("[T]he memorandum was sufficient evidence of [a] contract . . . [because] it contains all the essential elements of the contract . . . [including] the quantity sold and the price to be paid therefor . . . ."). Rather, the consideration that Gibson Brands allegedly received took the form of avoiding storage costs -- in consequence of Norris and Piano Mill having taken possession of the piano -- and not a payment. Thus, we do not

_____

[8] Gibson Foundation also raises on appeal the issue of whether the District Court improperly disregarded, as hearsay, evidence of internal e-mails between Gibson Brands employees that tended to show the existence of a warehousing agreement between Gibson Foundation and Piano Mill. Because we find, even without these e-mails, a genuine issue of material fact as to whether a contract exists between Gibson Foundation and Norris and Piano Mill, we do not address this contention.

see, and Norris and Piano Mill do not explain, why there must be a price for a contract of this nature to be valid. And, finally, while the District Court also suggested at the final pretrial conference that there was no agreement between the parties as to duration, a reasonable juror could find on this record that the parties agreed that Norris and Piano Mill would retain possession of the piano until Gibson Brands requested that it be returned. Thus, because we conclude that a reasonable juror could find on this record that the alleged contract's "essential terms" were "definite and certain" such that the "intention of the parties could be discovered, the nature and extent of their obligations ascertained, and their rights determined," Cygan, 96 N.E.2d at 703, we must reverse the District Court's grant of summary judgment to Norris and Piano Mill on the breach-of-contract claim.[9]

At the same time, we also must reject Gibson Foundation's contention that it is entitled to summary judgment on the claim and thus that we may not uphold the District Court's ruling to the contrary. As discussed in Part IV, there is a genuine issue of material fact as to whether Gibson Foundation or its purported predecessor in title, Gibson Brands, owned the piano in question. And that is significant because if Gibson Foundation or Gibson

---

[9] Norris and Piano Mill do not argue that, if there was a warehousing agreement, it was between them and Gibson Brands, not them and Gibson Foundation -- the current plaintiff. We thus do not address that contention.

Brands never owned or held title to the piano in question, then there would be no basis in this record for finding that there was a warehousing agreement between the parties.

Moreover, Norris and Piano Mill contend that, in any event, even if a reasonable juror could find based on the record that Gibson Brands did own the piano before Norris and Piano Mill took possession of it, a reasonable juror also could find on this record that, insofar as Gibson Brands owned the piano, Gibson Brands then gave it away to Norris and Piano Mill as a gift.[10] They point to the evidence in the record that supportably shows that Felber, an employee in Gibson Brands's entertainment-relations department, told Norris and Piano Mill that the piano would be "all yours" if Norris and Piano Mill could remove the piano by the end of the week, which they did. Thus, because we conclude that Norris and Piano Mill are right that the record evidence would permit a rational factfinder to determine that the piano was given to them as a gift, we must reject, for this reason, too, Gibson Foundation's challenge to the District Court's denial of its summary-judgment motion.

---

[10] Of course, should this case proceed to trial, the parties would be able to introduce evidence in addition to what is in the summary-judgment record.

**VI.**

The District Court's award of summary judgment to Norris and Piano Mill for the breach-of-bailment claim is **reversed**, while the District Court's denial of summary judgment to Gibson Foundation for the breach-of-bailment claim on alternative grounds is **affirmed**. In addition, the District Court's award of summary judgment to Norris and Piano Mill for the breach-of-contract claim is **reversed**, while its denial of summary judgment to Gibson Foundation for the breach-of-contract claim is **affirmed**. Costs are taxed in favor of Gibson Foundation.