# United States Court of Appeals
## For the First Circuit

No. 24-1763

GIBSON FOUNDATION, INC.,

Plaintiff, Appellee,

v.

ROB NORRIS,

Defendant, Appellant,

THE PIANO MILL GROUP, LLC,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Indira Talwani, U.S. District Judge]

Before

Barron, Chief Judge,
Howard and Kayatta, Circuit Judges.

Karen A. Pickett, with whom Pickett Law Offices, P.C. was on brief, for appellant.

Kurt Schuettinger, with whom Steven D. Howen, Law Offices of Steven Howen, Andrea Bates, and Bates & Bates LLC were on brief, for appellee.

November 20, 2025

BARRON, **Chief Judge**. We have before us a second appeal in this long-running dispute over a rhinestone-adorned piano that once belonged to the entertainer Liberace. In the first appeal, we reversed a grant of summary judgment in favor of the defendant -- Rob Norris, a piano retailer doing business as The Piano Mill ("Norris"). See Gibson Found., Inc. v. Norris, 88 F.4th 1, 4 (1st Cir. 2023). The underlying suit was brought by the piano's alleged owner -- the Gibson Foundation, Inc. ("Gibson Foundation").[1] It alleged, among other claims, a claim for breach of a bailment agreement Norris had with the plaintiff. Id. Following our ruling reversing the District Court's grant of summary judgment in favor of Norris on the bailment claim, a jury trial ensued. The jury ultimately entered a verdict in favor of the Gibson Foundation on the bailment claim. Norris now challenges the judgment based on that verdict on the grounds that the District Court erred when it admitted certain emails into evidence, failed to find that the Gibson Foundation was judicially estopped from proceeding on its breach-of-bailment claim, and denied Norris's motion for judgment as a matter of law as to that claim. We affirm.

---

[1] The Gibson Foundation is the charitable arm of Gibson Brands, Inc.

**I.**

The Gibson Foundation filed its suit against Norris based on diversity jurisdiction in December 2019. See 28 U.S.C. § 1332. The complaint alleges the following facts relevant to this appeal.

In 2011, the parties entered into a bailment agreement. In such an agreement, one party agrees to give their property temporarily to someone else to achieve a specific purpose. See Goudy & Stevens, Inc. v. Cable Marine, Inc., 924 F.2d 16, 18 (1st Cir. 1991). Here, Norris agreed to take temporary possession from the Gibson Foundation of its rhinestone-adorned piano, which Liberace once owned, so that the Gibson Foundation would be able to "promote the Liberace Piano and to generate additional goodwill" for the company without having to be responsible for storing it. For his part, Norris would "take advantage of display, performance, and promotional opportunities" from having such a piano in his possession. In 2019, the Gibson Foundation requested the return of the piano. Norris, however, did not return the piano to the Gibson Foundation, thereby breaching the bailment agreement.

Following discovery, Norris moved for summary judgment. The motion argued, among other things, that there was no evidentiary basis in the record for finding a bailment agreement.

The District Court granted the motion with respect to the breach-of-bailment claim. It did so, however, solely on the ground that the claim was time-barred.

The Gibson Foundation appealed, and we reversed. See Gibson Found., Inc., 88 F.4th at 10-11. In doing so, we held that we could not affirm the grant of summary judgment on the alternative ground that there was no genuine dispute of material fact as to any elements of the claim. Rather, we held, there was such a dispute as to whether the Gibson Foundation had owned the piano at the time the alleged bailment agreement had been struck. Id. at 11.

On remand, the case proceeded to a jury trial, and the jury entered a verdict in favor of the Gibson Foundation on the breach-of-bailment claim. The District Court entered judgment on the claim in August 2024. This timely appealed followed.

**II.**

Norris first argues that the judgment on the bailment claim cannot stand because the District Court erred in admitting certain emails into evidence -- namely, certain emails in Exhibit 36 -- at the trial. According to Norris, those emails were inadmissible because they included hearsay. Separately, he contends that they "were not relevant because they were not shared with Mr. Norris."

- 4 -

Norris rounds out this challenge by arguing that the admission of the emails into evidence prejudiced him because they were "the only evidence offered by [the Gibson Foundation] to show the 'plan' was for a loan, not a gift." In that regard, he points out that the alleged bailment agreement between himself and the Gibson Foundation could not have existed if the Gibson Foundation had given the piano to him as a gift.

We start with Norris's challenge based on the emails not being relevant. Even assuming that this ground of challenge is preserved and thus that our review is for abuse of discretion, see United States v. Rathbun, 98 F.4th 40, 51 (1st Cir. 2024), we see no merit to it.

The emails at issue were between two then-Gibson Foundation employees -- Jim Felber and Tom Dorn -- and were sent between June 20 and June 28, 2011. In them, Felber and Dorn discussed an offer that Norris had made to Dorn. Norris proposed in that offer that he would receive one of Gibson's pianos and promote it, even though Norris was "not currently in a position to shell out the 30k" to purchase a piano.

On June 27, 2011, in response to the offer that Norris sent to Dorn, Felber stated in one of the emails that he "wish[ed] they take a long term loan out on our 9 foot Liberace. . . . Think they would?" That same day, Dorn responded, "I will ask [Norris] about it tomorrow. I expect he will be very interested."

In concluding that the emails were relevant, the District Court reasoned as follows. One of Norris's main arguments at trial was that he agreed to accept the piano as a gift in a phone conversation with a former Gibson Foundation employee -- that is, Felber -- sometime between June 21 and June 28, 2011. Yet, if such a gift arrangement had been made as of that time, the District Court asked, "why would [Felber] ask Tom Dorn, 'Do you think he'll do this?'" In other words, the District Court explained, the "implication from that is[] that . . . . Felber never had a conversation with [Norris]."

We see no abuse of discretion in the District Court's determination. To be relevant, evidence need only "move the inquiry forward to some degree." Rathbun, 98 F.4th at 51 (quoting United States v. Cruz-Ramos, 987 F.3d 27, 42 (1st Cir. 2021)).

We also agree with the District Court's reasoning that the email exchange provided support for finding that Felber's plan was to loan the piano to Norris, "which makes it less likely that he said, 'You can have it'" to Norris. So, for this reason as well, we conclude that the District Court did not abuse its discretion in determining that the emails were relevant to a central point of dispute between the parties with respect to the bailment claim -- namely, whether there was a bailment agreement at all.

Of course, these emails do contain hearsay. As a result, we also must address Norris's separate, hearsay-based ground for challenging the admission of the emails into evidence. Our review is for abuse of discretion, see United States v. Colón-Díaz, 521 F.3d 29, 33 (1st Cir. 2008), and, again, we find none.

The District Court acted well within its discretion in reasoning that the emails fell within the exception to the bar on the admissibility of hearsay that Federal Rule of Evidence 803(3) sets forth. That rule allows otherwise inadmissible hearsay to be admitted not for its truth but to show the speaker's "then-existing state of mind (such as motive, intent, or plan)." Fed. R. Evid. 803(3). As the District Court explained, the emails supportably show that "Felber is setting forth -- giving some directions as to a plan" for a "long term loan out on [the company's] 9 foot Liberace." And the District Court implied that the jury could infer that Felber followed through on the plan to offer the piano on loan.[2]

---

[2] The District Court did not characterize it as such, but this use of hearsay evidence is known as the Hillmon doctrine. A "sub-category of the state-of-mind exception," Hillmon "allows admission of a hearsay statement of intent for the purpose of showing that the declarant later acted in accordance with his or her expressed intention." United States v. Diaz, 597 F.3d 56, 66 (1st Cir. 2010) (citing Mut. Life Ins. Co. v. Hillmon, 145 U.S. 285 (1892)); see also Minh Tu v. Mut. Life Ins. Co., 136 F.3d 77,

Norris relies on Ira Green, Inc. v. Military Sales & Service Co., 775 F.3d 12 (1st Cir. 2014), to argue that offering the emails as "proof of [the Gibson Foundation's] 'plan' as opposed to 'ownership' [of the piano] cannot change the fact that the emails are inadmissible hearsay." But, as the Gibson Foundation points out, Ira Green's evidence-related conclusions are about a different hearsay exception -- for business records. See Fed. R. Evid. 803(6). They thus do not bear on what constitutes an appropriate "plan" or "intent" under the state-of-mind hearsay exception. Fed. R. Evid. 803(3).

Norris also argues that the emails do not fall within the exception set forth in Rule 803(3) because they do not "discuss an 'existing state of mind'" of the emails' senders. Instead, he contends, the "emails are expressions of how [Gibson] employees may have wished for Mr. Norris to accept the piano." But this argument depends on an interpretation of the content of the emails that is precisely the kind of "assessment of the evidence" that is entrusted to the discretion of a district court. Whitney Bros. Co. v. Sprafkin, 60 F.3d 8, 12 (1st Cir. 1995). We thus would only disturb that assessment if it were clearly erroneous, see id.

81 (1st Cir. 1998) ("An out-of-court statement by Phuong Ly as to her intent is, of course, hearsay, but it is within the mental state exception and permits the further inference that she acted in accordance with her intent.").

("[A] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." (quotations and citation omitted)), and it is not.

For these reasons, Norris's evidentiary-based challenge to the judgment below fails. Accordingly, we need not address Norris's arguments about why the business records exception to the hearsay bar is inapplicable.

## III.

Norris separately argues that the judgment on the breach-of-bailment claim cannot stand because the District Court erred in declining to judicially estop the Gibson Foundation from proceeding on that claim. The judicial estoppel issue arose in the District Court in the following way.

During the trial, the Gibson Foundation asked the District Court to bar Norris from using certain bankruptcy documents to suggest the Gibson Foundation's parent company had "concealed the existence of the Liberace Piano in an attempt to evade creditors" during a prior bankruptcy. Those bankruptcy documents included lists of assets of two companies: the Gibson Foundation's parent company, Gibson Brands, Inc.; and Baldwin Piano Inc., a subsidiary of the parent company.

The District Court "recognized" -- of its own accord -- that "if the bankruptcy filings were an attempt to evade

creditors, the court should exercise its discretion to dismiss Plaintiff's actions" under judicial estoppel. See Perry v. Blum, 629 F.3d 1, 8 (1st Cir. 2010) (noting that judicial estoppel "operates to prevent a litigant from taking a litigation position that is inconsistent with a litigation position successfully asserted by him in an earlier phase of the same case or in an earlier court proceeding"). The District Court therefore asked the parties for briefing on the judicial estoppel issue.

Following the briefing, however, the District Court explained that "the court does not find that there necessarily was an attempt to defraud creditors in connection with the bankruptcy filings." In consequence, it permitted the Gibson Foundation to pursue the claim against Norris.

Norris relies solely on federal law precedents in challenging the District Court's judicial-estoppel ruling on appeal. The Gibson Foundation similarly proceeds as if federal law applies. Cf. Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 32 (1st Cir. 2004) ("As judicial estoppel appears neither clearly procedural nor clearly substantive, there may be a legitimate question as to whether federal or state law . . . should supply the rule of decision."). We thus follow suit. See id. ("[Where] the parties have agreed about what law governs, a federal court sitting in diversity is free, if it chooses, to forgo independent analysis and accept the parties'

agreement." (quoting <u>Borden</u> v. <u>Paul Revere Life Ins. Co.</u>, 935 F.2d 370, 375 (1st Cir. 1991))).

Norris bears the burden of showing that judicial estoppel applies, <u>In re Buscone</u>, 61 F.4th 10, 26 n.21 (1st Cir. 2023) ("[J]udicial estoppel is an affirmative defense that [the proponent] ha[s] the burden of proving."), notwithstanding that the District Court sua sponte considered judicial estoppel and asked the parties for briefing on the issue. Our review of the District Court's judicial estoppel determination is for abuse of discretion. See <u>Alt. Sys. Concepts</u>, 374 F.3d at 32 (noting that we do "not overturn a . . . court's discretionary decision unless it plainly appears that the court committed a clear error of judgment in the conclusion it reached upon a weighing of the proper factors").

Norris rests his contention that the District Court abused its discretion on the understanding that the District Court required "a showing of 'attempt' or 'intent' to defraud creditors" that Norris did not make. From that premise, Norris goes on to argue that the District Court made an error of law -- and so abused its discretion -- because there is no such requirement under the judicial estoppel doctrine.

Norris is right that proof of an intent to defraud or mislead is not a <u>requirement</u> of the federal doctrine of judicial estoppel in this Circuit. See <u>Perry</u>, 629 F.3d at 9 (noting the

- 11 -

elements of judicial estoppel are that (1) "a party's earlier and later positions must be clearly inconsistent," (2) "the party must have succeeded in persuading a court to accept the earlier position," and (3) "the party seeking to assert the inconsistent position must stand to derive an unfair advantage if the new position is accepted by the court"). But we have explained that "attempting to defraud or mislead [another] court . . . . is potentially important because judicial estoppel is not meant to be a trap for the unwary and should be employed sparingly when 'there is no evidence of intent to manipulate or mislead the courts.'" Id. at 13 (emphasis added) (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir. 1996)).

Considering the District Court's reference to the absence of fraudulent intent in the context of its overall analysis, we do not understand the judicial estoppel ruling to have been based on a determination that the doctrine required Norris to prove the Gibson Foundation's fraudulent intent. Instead, we understand the District Court merely to have considered that intent as part of its consideration of the doctrine's applicability in this specific case. After all, the mere fact that the District Court considered whether the Gibson Foundation had a fraudulent intent in making the representation that it did fails to show that the District Court understood proof of fraudulent intent to be a requirement of the doctrine of judicial

- 12 -

estoppel. And the District Court expressly left open the possibility of later applying judicial estoppel if the Gibson Foundation made certain arguments that the District Court deemed inconsistent.[3] Accordingly, we conclude that there is no merit to this challenge.

## IV.

Norris's final ground for challenging the judgment on the breach-of-bailment claim is that the District Court erred in not ruling in his favor on his renewed motion for judgment as a matter of law. Here, Norris argues there was not enough evidence introduced at trial for the jury to find a breach of a bailment agreement -- even when the evidence is viewed in the light most favorable to the Gibson Foundation. Specifically, he argues that the only direct evidence of a bailment agreement was Exhibit 36,

---

[3] Norris also claims that "the district court erred in preventing Mr. Norris from arguing that there was 'nondisclosure' by the predecessors-in-interest." The Gibson Foundation responds that the District Court did in fact allow Norris "to argue in closing [that] the asset was not listed." The Gibson Foundation is correct. At trial, the District Court permitted Norris to "argue that [Gibson] didn't claim ownership" over the piano and that "the claim [over the piano] [wa]s not listed" in the relevant bankruptcy filings. Counsel for Norris responded, "That's all I want." During closing, Norris's counsel told the jury that the "bankruptcy documents" contained "no specific listing . . . of the Liberace piano, and there's no specific listings of the claim for return of the Liberace piano." Therefore, the premise of Norris's claim is incorrect, and we decline to consider it further.

- 13 -

which was "not admitted as substantive evidence" of a loan agreement between Norris and the Gibson Foundation.

"We review de novo the denial of a motion for judgment as matter of law." Blomquist v. Horned Dorset Primavera, Inc., 925 F.3d 541, 546 (1st Cir. 2019) (emphasis omitted). "Although we examine the record as a whole, the facts are construed in the light most favorable to the jury verdict, and any inferences are drawn in favor of the non-movant." Id. (citation omitted). In practice, this means "we must sustain the district court's denial of [the] motion for judgment as a matter of law unless the evidence could lead a reasonable person to only one conclusion, namely, that the moving party was entitled to judgment." Id. (citation modified).

Norris premised his motion below on a largely identical argument to the one that he now makes to us. See Gibson Found., Inc. v. Norris, No. 1:20-cv-10682, 2024 WL 4626230, at *3 (D. Mass. Oct. 30, 2024). In ruling on that motion, the District Court first noted that Massachusetts state law allows a party to prove an implied contract through the parties' conduct. Id. The District Court then explained that, "[w]hile [Exhibit 36[4]] was not evidence of an implied contract, [the] Gibson Foundation presented evidence

---

[4] The District Court referenced "Exhibit 35" here in its reasoning, but this appears to be a mistake. In Norris's motion to the District Court, he took issue with Exhibit 36.

- 14 -

of Norris's conduct that could support a reasonable inference that an implied contract existed." Id. That evidence included: (1) the fact Norris sent an email to the Gibson Foundation confirming that he had moved the piano safely; (2) that Norris asked the Gibson Foundation whether it was "okay" for him to make certain repairs to the piano, to which a Gibson employee responded in the affirmative; and (3) the fact that the same Gibson employee gave Norris his phone number, when Norris claimed that he had previously spoken to that employee on the phone. Id.

Based on this evidence, the District Court concluded that a reasonable juror could find that Norris "was asking for permission to repair the piano, and that such conduct shows the implied contract of bailment between the parties." Id. We agree.

Norris is right that the Gibson Foundation "cannot meet its burden of proof by impeachment of Mr. Norris' credibility alone." But the District Court did not rely only on impeachment evidence in ruling on the motion. Instead, it identified specific evidence of Norris's conduct that could reasonably support a jury finding in the Gibson Foundation's favor.

We do note that, although the District Court did not rely on Exhibit 36 in denying Norris's motion, the emails in Exhibit 36 also provide support for the jury's verdict. The District Court permitted the jury to infer from them that Dorn and Felber actually followed through on their intentions to offer the

piano on loan to Norris.  Specifically, the District Court told the jury that "Mr. Felber is setting forth -- giving some directions as to a plan.  And you can consider that when you consider what did or didn't happen afterward."  See Fed. R. Evid. 803 advisory committee's notes to 1972 proposed rules (noting that Rule 803(3) "allow[s] evidence of intention as tending to prove the doing of the act intended").

Norris does advance various alternative explanations for the evidence that the District Court relied on in denying the motion.  For example, he claims that, in asking if it was okay for Norris to make repairs, "he was asking the piano maker's opinion on whether [the] repairs would devalue the piano."  We must read the evidence in the light most favorable to the verdict, however.  See Blomquist, 925 F.3d at 546.  Thus, we conclude that the District Court did not err in denying Norris's renewed motion for judgment as a matter of law.

**V.**

Based on the foregoing, we **affirm** the judgment below.